JUSTICE TIMPONE
delivered the opinion of the Court.
This appeal raises the issue of whether a defendant’s mother, who purportedly lied to law enforcement officers twice in the past in order to assist her son in evading prosecution, may be cross-examined on those prior instances as evidence of her bias.
Defendant Thomas Scott was charged with possession of heroin. He argued that he did not knowingly possess the heroin because someone else placed it in his jeans pocket before he put them on. *474 In support, defendant sought to call his mother, Darlene Barbella, to testify that she found the heroin in defendant’s apartment in close proximity to defendant’s cousin and known drug user, Jordan Scott, and that she placed the heroin in the pocket of a pair of jeans she believed belonged to Jordan.
Defendant filed a motion in limine, seeking a preliminary ruling on the admissibility of certain evidence, including Barbella’s testimony. In response, the State sought to introduce evidence of two prior occasions on which Barbella allegedly lied to police to cover for her son, defendant. The trial court ruled the State’s impeachment evidence admissible. Defendant chose not to call Barbella at trial, instead calling Lauren Halbersberg, defendant’s friend, to testify to the same events. The Appellate Division affirmed the trial court’s determination that the evidence was admissible based upon the State’s harmless error and bias arguments.
We find that the evidence proffered by the State goes far afield of a proper bias inquiry into Barbella’s relationship with defendant. The evidence is inadmissible under the dictates of New Jersey Rules of Evidence 403 and 608, which govern admissibility of prior bad acts and character evidence for truthfulness. That error prevented defendant from fully developing his defense at trial and deprived the jury of key witness testimony. Accordingly, we reverse the Appellate Division’s findings that the trial court’s error was harmless and that bias supported the trial court’s admissibility ruling.
I.
We glean the relevant facts from the trial testimony. On November 27, 2012, Halbersberg and Jordan were at defendant’s home, a second-floor apartment in a duplex in Long Branch. Barbella owned the duplex and lived in the first-floor apartment.
According to Halbersberg, Barbella visited defendant’s apartment twice that day. During the second visit, Barbella noticed two packets of heroin lying on a table in the living room. She took the packets, placed them in the pocket of a pair of jeans that were *475 lying on the couch next to Jordan, and returned the jeans to the couch. Halbersberg added that, during this time, defendant prepared to take a shower, lacking any knowledge of the heroin placement.
After showering, defendant retrieved from the couch the jeans now containing two packets of heroin, took them into the bathroom, and put them on. Defendant left shortly thereafter, when a friend picked him up at the apartment. Halbersberg concluded by testifying that because of the “commotion,” she failed to warn him of the heroin in his jeans.
Detective Zotti of the Long Branch police department observed defendant leave his apartment and get into the front-passenger seat of a vehicle. Zotti knew defendant from previous arrests. He asked his dispatcher to perform a warrant check on defendant while he began following defendant in the vehicle. Defendant was driven a short distance; the vehicle stopped, and defendant exited. Zotti approached defendant and started a conversation. In the meantime, dispatch advised Zotti of an active arrest warrant for defendant. Zotti made the arrest, conducting a search incident to the arrest, which yielded the two packets of heroin. While being escorted to a patrol car, defendant uttered, “I did not know that the heroin was in my pocket, I have not worn these pants in weeks, I would have eaten it, if I had known I had it on me.”
A Monmouth County grand jury indicted defendant for third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1). In preparation for trial, defendant filed a motion in limine, seeking a preliminary ruling on the admissibility of certain testimony. Specifically, defendant successfully sought introduction of his out-of-court statements to the police regarding his claimed ignorance of the heroin in his jeans. Defendant also sought to introduce the testimony of his mother, Barbella, based on an interview she gave to an investigator for the public defender’s office a little over a year after the incident.
During that interview, Barbella recounted her visit to the apartment while defendant was in the shower. She noted that *476 Jordan was lying on the couch “semi-conscious,” appearing to be “heavily under the influence of drugs,” and that she told him to get out of her house. She then spotted the packets of heroin and put them into the front pocket of the jeans lying on the couch right next to Jordan. Because of their proximity to Jordan, Barbella assumed the jeans were his. Barbella further stated that Jordan returned to her home later that day banging on the side door, shouting, “Tommy got arrested.... Tommy’s got my drugs and money.”
In response, the State sought to introduce evidence that, in two previous instances, Barbella lied to officers in order to “cover up” for defendant. As the State recounted the first instance, officers saw defendant working on a car in his driveway. As they approached, defendant quickly retreated into the garage and shut the door. When the officers confronted Barbella about defendant’s whereabouts, she told them that he was not home. In response to an unrelated medical emergency, officers later entered the house and found defendant inside. In the second instance, Barbella allegedly gave a written statement to police regarding defendant’s involvement in a burglary, which she later admitted was false.
Defendant argued the inadmissibility of Barbella’s prior false statements to police pursuant to N.J.R.E. 404(b). Defendant claimed the State compounded the problem by failing to move for a Cofield hearing to determine admissibility under Rule 404(b). See State v. Cofield, 127 N.J. 328, 606 A.2d 230 (1992). The State countered that the evidence very belatedly came into its possession; it raised the issue as soon as practicable and, most importantly, the evidence satisfied the Cofield test.
After hearing arguments from both parties, the trial court ruled that the State’s evidence regarding “Ms. Barbellaf’s] ... propensity to cover up her son’s wrongdoings” was “highly relevant” and therefore “admissible both on cross examination and on rebuttal if she elects to take the stand.” In examining the arguments under the rules of evidence, the court reasoned that
*477 [t]his really isn’t 404(b). It's more in the nature of Rule 608, which says the credibility of a witness in a criminal case may be attacked by evidence that the witness made a prior false accusation against any person of a crime similar to the crime with which the defendant is charged if the Judge preliminarily determines, by a hearing pursuant to Rule 104, that the witness knowingly made a prior false accusation.
This is not a case «'here she made a prior false accusation. It’s just the opposite. She gave false information to the police trying to exonerate her son. And 104(a) basically says that when you’re dealing with issues of this nature, the Judge makes a determination but he does not have to apply strictly the rules of evidence.
The defense made no further objections to the ruling. Instead, defendant made a tactical decision not to call Barbella. As a substitute, defendant called Halbersberg, who gave testimony strikingly similar to that expected from Barbella.
Defendant was convicted as charged and, based upon a balancing of the aggravating and mitigating factors in N.J.S.A. 2C:44-1, was sentenced to a five-year custodial term with two-and-a-half years of parole ineligibility.
The Appellate Division affirmed the trial court’s in limine ruling. The panel confirmed the trial court’s rejection of N.J.R.E. 404(b) as a ground for admissibility, in addition to finding the evidence inadmissible under N.J.R.E. 608. The panel also faulted the trial court for relying on Rule 104(a) to avoid strict compliance with the rules of evidence. The panel, nevertheless, held that the evidence was admissible to impeach Barbella through bias—a position adopted by the State for the first time on appeal. Alternatively, the panel reasoned that any error was harmless on two fronts: (1) Barbella’s testimony was cumulative of Halbersberg’s, which the jury found unpersuasive; and (2) the State could have presented the same bias argument through evidence of Barbella and defendant’s familial relationship alone. We granted defendant’s petition for certification. 227 N.J. 22, 147 A.3d 443 (2016).
II.
A.
Defendant submits that the trial court appropriately cited N.J.R.E. 608—governing impeachment of a witness—but ultimate- *478 ]y misapplied it. According to defendant, Rule 608 specifically prohibits the admission of prior bad acts where they do not relate to a prior conviction or prior false accusation. The preliminary determination that the State would be permitted to cross-examine Barbella on her prior bad acts, defendant contends, violated his federal Fourteenth and Sixth Amendment rights, as well as the corresponding state-constitutional rights.
The violations were compounded, defendant asserts, when the Appellate Division: (1) wrongfully entertained the State’s “new-on-appeal bias argument,” in violation of State v. Witt, 223 N.J. 409, 418-19, 126 A.3d 850 (2015); (2) incorrectly interpreted case law on bias in a manner inconsistent with Rule 608(a); (3) improperly admitted the prior bad acts without conducting a Rule 404(b) hearing, diverging from the holding in Cofield, supra, 127 N.J. at 338-42, 605 A.2d 230; and (4) improperly found that the errors were harmless.
B.
The State counters that the Appellate Division’s consideration of the bias argument is consonant with Witt because the admissibility of the impeachment was contested at trial, leaving a fulsome record sufficient to resolve the legal issue on appeal. Next, relying heavily on the United States Supreme Court’s opinion in United State v. Abel, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), the State submits that proving bias by specific acts is consistent with the strictures of N.J.R.E. 608.
Even if the trial court’s ruling were in error, the State submits, the error was harmless because: (1) defendant’s theory of the case was “inherently implausible” and cumulative testimony would not have altered the theory’s plausibility; (2) Barbella’s proffered testimony corroborated only a small portion of Halbersberg’s testimony, each of which was partially inconsistent with the other; and (3) if Barbella’s testimony were permitted, there is not a “reasonable probability the verdict would be any different.”
*479 III.
“[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court’s discretion.” Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84, 997 A.2d 954 (2010). We therefore apply a deferential standard in reviewing a trial court’s evidentiary rulings and uphold its determinations “absent a showing of an abuse of discretion.” State v. Perry, 225 N.J. 222, 233, 137 A.3d 1130 (2016) (quoting State v. Brown, 170 N.J. 138, 147, 784 A.2d 1244 (2001)). A reviewing court must not “substitute its own judgment for that of the trial court” unless there was a “clear error in judgment”—a ruling “so wide of the mark that a manifest denial of justice resulted.” Ibid. (quoting State v. Marrero, 148 N.J. 469, 484, 691 A.2d 293 (1997)).
IV.
As a preliminary question, we first discuss whether the State was permitted to raise a different justification for admissibility on appeal. It is a long-standing principle underlying appellate review that “appeals are taken from orders and judgments and not from opinions ... or reasons given for the ultimate conclusion.” Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199, 773 A.2d 706 (2001); accord State v. DeLuca, 168 N.J. 626, 631, 633, 775 A.2d 1284 (2001) (finding search constitutional under different exception than that relied upon by trial court); Shim v. Rutgers, 191 N.J. 374, 378, 924 A.2d 465 (2007) (affirming Appellate Division judgment on different grounds); State v. Nellom, 178 N.J. 192, 196, 836 A.2d 807 (2003) (same); Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968) (“[T]he fact that [the order] was predicated upon an incorrect basis will not stand in the way of its affirmance.”).
From that principle we have carved a limited exception in cases where failure to raise the issue created a “record ... barren of facts that would shed light on [the] issue.” Witt, supra, 223 N.J. at 418, 126 A.3d 850. In Witt, this Court was faced with the issue of whether exigency permitted the State to bypass the warrant *480 requirement. Id. at 414-15, 126 A.3d 850. During a suppression hearing, the defendant challenged the validity of the warrantless search but not the stop itself. Id. at 418, 126 A.3d 850. On appeal, defendant challenged the validity of the stop for the first time. Ibid.
In holding that the lawfulness of the stop had not been preserved for appellate review, we reasoned that permitting the delayed challenge would require the State, in future suppression hearings, “to cover areas not in dispute” and require “the State to disprove shadow issues” due to “fear that an abbreviated record [would] leave it vulnerable if the defense raises issues for the first time on appeal.” Ibid. The byproduct of holding otherwise would have been to “needlessly lengthen suppression hearings!,] ... resulting] in an enormous waste of judicial resources.” Ibid.
Even though we come to a different ultimate result than in Witt, the same underlying principles apply here. The State proffered a rule-based justification for the admissibility of the impeachment testimony, which the trial court apparently accepted. There was no reason for the State to submit a second justification for the evidence’s admissibility. The facts here present the opposite side of the Witt coin. Adopting defendant’s position would require the State to submit every potential justification for the admission of evidence in fear that the reversal of one explanation on appeal would deny it the benefit of other reasons for admissibility. As we recognized in Witt, that result would lengthen in limine hearings and would result in an enormous waste of judicial resources. See ibid.
Unlike Witt, the record here is fully developed. The alternative justification upon which the State relies is bias. Even a cursory review of the record reveals sufficient facts upon which the State can base its bias argument. Because we do not find the current record “barren of facts that would shed light on [the] issue,” ibid., we find it appropriate to review the bias argument raised before the Appellate Division and turn to its substance.
*481 V.
A.
Our Rules of Evidence start from the proposition that all relevant evidence is admissible, subject to delineated categories of excluded evidence. N.J.R.E. 402 (“Except as otherwise provided in these rules or by law, all relevant evidence is admissible.”). Rule 607 permits, “for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness [to] examine the witness and introduce extrinsic evidence relevant to the issue of credibility,” unless an exception within that rule applies or either Rule 405 or 608 renders the evidence inadmissible.
Those Rules preclude the use of specific instances of conduct to attack the credibility of a witness. N.J.R.E. 405 provides that “[s]pecific instances of conduct not the subject of a conviction of a crime shall be inadmissible,” and N.J.R.E. 608 indicates that “a trait of character cannot be proved by specific instances of conduct” unless the prior act was a “false accusation against any person of a crime similar to the crime with which defendant is charged.” Otherwise, relevant evidence may also be excluded on the ground that “its probative value is substantially outweighed by the risk of ... undue prejudice.” N.J.R.E. 403.
The Rules do not explicitly discuss bias as a permissible means of impeachment; however, this Court has long found the use of bias to attack a witness’s credibility proper. See, e.g., State v. Bass, 224 N.J. 285, 302, 132 A.3d 1207 (2016) (“[C]laimed bias of a witness is generally an appropriate inquiry in cross-examination in criminal trialsf.]”); State v. R.K., 220 N.J. 444, 458, 106 A.3d 1224 (2015) (“At trial, a party may introduce evidence that an adverse witness is biased.”); State v. Pontery, 19 N.J. 457, 472, 117 A.2d 473 (1955) (“[I]t is proper for either the defense or the prosecution to show the interest of a witness as bearing upon the witness’ credibility.”). Where a party seeks to demonstrate bias, it *482 may do so by introducing extrinsic evidence. R.K., supra, 220 N.J. at 459, 106 A.3d 1224.
We find the United States Supreme Court’s decision discussing the interrelation of bias and specific instances of bad conduct instructive here. In Abel, supra, the District Court permitted the introduction of a witness’s membership in the Aryan Brotherhood, of which the defendant was also a member, to prove that the testimony the witness would give was biased. 469 U.S. at 47, 105 S.Ct. at 466-67, 83 L.Ed.2d at 454. The Court commenced the analysis by defining bias as “the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party.” Id. at 52, 105 S.Ct. at 469, 83 L.Ed.2d at 457. Armed with that definition, the Court reasoned that “[a] witness’ and a party’s common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias.” Ibid. In responding to the defendant’s argument that his membership was a specific instance of conduct, the Court—relying on the principle that evidence inadmissible for one purpose may be admissible for another—found it of no consequence that the Aryan Brotherhood’s tenet requiring perjury “might also impeach his veracity directly” as propensity evidence. Id. at 56, 105 S.Ct. at 471, 83 L.Ed.2d at 460.
B.
We do not quarrel with the State’s position, which is well established, that cross-examining witnesses in criminal trials based on their bias towards the accused is permitted. We do not find, however, that the prior instances of Barbella’s lying to law enforcement officers are probative of her bias. The query, as it relates to bias, is “the relationship between a [defendant] and a witness.” Id. at 52, 105 S.Ct. at 469, 83 L.Ed.2d at 457. The relationship between defendant and Barbella could have been probed by eliciting the fact that Barbella was defendant’s mother. It is equally true that the State could have asked Barbella about whether she would lie to protect her defendant son. That is the *483 permissible limit of the State’s inquiry into her bias. When the State’s evidence goes beyond an inquiry into the relationship between the defendant and the witness, the shelter provided by bias erodes and the State must seek refuge under other admissibility grounds.
Reviewing the remaining evidentiary rules, we find the State’s remaining arguments unavailing as well. The only other reason for which the State could have proffered the prior-acts testimony is to show Barbella’s character for untruthfulness. Like both the trial court and the Appellate Division, we find the enumerated exceptions in Rule 404(b) inapplicable. Further, Rule 608 explicitly excludes specific instances of conduct as a means of proving a character for untruthfulness, permitting only opinion or reputation evidence.
Moreover, even if Rule 608 did not specifically bar the proffered impeachment evidence, we find its probative value substantially outweighed by its prejudicial nature. The evidence does not only implicate Barbella in prior instances of lying, it also connects defendant to multiple prior criminal episodes. Examining Barbella on her relationship to defendant was surely probative, but the added benefit of examining her on the past instances of dishonesty was slight. Because the prejudice extends to both Barbella and defendant, it significantly outweighs the slight probative value gained from cross-examining Barbella on the prior instances. Consequently, we find that the trial court abused its discretion in ruling in limine that the proposed impeachment testimony was admissible against Barbella. Based on that finding, it is unnecessary to address whether a Cofield analysis was necessary and we turn, instead, to a discussion of whether the error was harmless.
VI.
A.
Rule 2:10-2 directs reviewing courts to disregard “[a]ny error or omission ... unless it is of such a nature as to *484 have been clearly capable of producing an unjust result.” Known as the harmless error doctrine, that rule “requires that there be ‘some degree of possibility that [the error] led to an unjust result.’” State v. R.B., 183 N.J. 308, 330, 873 A.2d 511 (2005) (alteration in original) (quoting State v. Bankston, 63 N.J. 263, 273, 307 A.2d 65 (1973)). In discussing the extent of error required for reversal, we noted “[t]he possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached.” Ibid, (second alteration in original) (quoting Bankston, supra, 63 N.J. at 273, 307 A.2d 65). Exclusion of testimony, however, which is central to a defendant’s claim or defense, “if otherwise admissible, cannot be held to be harmless error.” State v. Kelly, 97 N.J. 178, 202-03, 478 A.2d 364 (1984).
B.
Unlike the Appellate Division, we find the trial court’s error harmful. In doing so, we look to evidence outside of defendant’s testimony because it is the “sort of evidence that a jury naturally would tend to discount as self-serving.” See Skipper v. South Carolina, 476 U.S. 1, 8, 106 S.Ct. 1669, 1673, 90 L.Ed.2d 1, 9 (1986). We therefore focus primarily on Halbersberg’s testimony and the proffer of Barbella’s testimony. Barbella was defendant’s central witness; who better to corroborate defendant’s “unknowing” theory than the person who placed the heroin in his pants. Although the prior-bad acts evidence was ultimately not admitted here, “defendant paid a [significant] price to keep it out.” State v. P.S., 202 N.J. 232, 260, 997 A.2d 163 (2010).
We agree that it is possible that the jury could have discounted Barbella’s testimony, like Halbersberg’s, or that the jury would have been persuaded by the State’s inevitable bias summation, or that the jurors “might have independently discounted the probative force of the mother’s testimony, in light of the family relationship.” These mere possibilities, however, do not render an error harmless. Nor can we condone a harmless-error *485 finding based on possibilities alone. The evidentiary error here deprived the jury of the opportunity to “evaluate [Barbella’s] tone, manner, and body language, and accordingly, to assess [her] credibility.” P.S., supra, 202 N.J. at 260, 997 A.2d 163. An error resulting in the jury’s inability to assess the credibility of the defense’s key witness is ordinarily not harmless. While the dissent may find the defense implausible, that decision is in the sole province of the jury. Judges should not intrude as the thirteenth juror.
Nor do we find Barbella’s testimony merely cumulative. Rather, it is corroborative. The testimony of Barbella and Halbersberg illustrate the scenario from different vantage points. Barbella’s expected testimony would have her placing the drug packets into the pocket of a stray pair of jeans she believed belonged to her drug-addled nephew. She then left the apartment. Barbella’s testimony is important for the jury to consider and evaluate because if believed, she provides a first-hand rationale for placing the packets in the jeans’ pocket. Namely, she placed the packets in the jeans and then told Jordan to leave, which would have effectively removed the heroin from her apartment.
Halbersberg’s testimony overlapped some of Barbella’s; corroborative testimony is the hallmark of presenting a credible defense. No one would suggest that a second eyewitness to a crime is merely cumulative testimony because of the availability of one eyewitness. The same logic must apply to the presentation of the defense in this case. Halbersberg’s testimony crucially went beyond Barbella’s proffered testimony and picked up after Barbella had left the apartment. Importantly, Halbersberg saw the defendant come out of the shower, grab the jeans from the couch, and leave wearing them. Both witnesses were critical to the defense; the synergy of the two made the theory significantly more plausible.
The trial court’s in limine ruling “alter[ed] [defendant’s] trial strategy,” precluding him from presenting—and the jury from assessing—a key witness who would have provided both new and *486 corroborative evidence. See ibid. As a result, we find harmful error.
VII.
The judgment of the Appellate Division affirming the trial court’s in limine order is reversed.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA and ALBIN join in JUSTICE TIMPONE’s opinion. CHIEF JUSTICE RABNER filed a separate, concurring opinion, in which JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join. JUSTICE ALBIN filed a separate, concurring opinion, in which JUSTICE LaVECCHIA joins. JUSTICE PATTERSON filed a separate, partially concurring and partially dissenting opinion, in which JUSTICES FERNANDEZ-VINA and SOLOMON join.