**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5410-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WILLIAM SPORMAN,

     Defendant-Appellant.

_____

Submitted March 2, 2020 – Decided April 29, 2020

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Municipal Appeal No. 19-0025.

Roberts & Teeter, LLC, attorneys for appellant (Michael B. Roberts, on the briefs).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Lauren R. Casale, of counsel and on the brief).

PER CURIAM

Defendant was convicted by a municipal court and, after a de novo appeal, by the Law Division, for shoplifting in violation of N.J.S.A. 2C:20-11(b)(1), possession of fifty grams or less of marijuana in violation of N.J.S.A. 2C:35-10(a)(4), and for possession of a controlled dangerous substance (CDS), marijuana, in a motor vehicle while "operat[ing] . . . on any highway" in violation of N.J.S.A. 39:4-49.1. The municipal court sentenced defendant to fifteen days in county jail, imposed fines, penalties, and assessments, ordered two years loss of license on the motor vehicle summons and a consecutive six-month loss of license on the 2C:35-10(a)(4) violation. After considering the parties' arguments against the applicable law and standards of review, we affirm defendant's convictions, but we remand to the Law Division for the court to sentence defendant.

I.

At the municipal court trial, the State presented the testimony of Jordan Reagan, a loss prevention supervisor at Kohl's in Hillsborough, and Richard Joseph Yock, a police officer with the Hillsborough Township Police Department. Reagan testified that on August 9, 2018, he was monitoring the store security cameras and observed defendant "select a Nike pair of sunglasses and pull the tab off of them . . . throw [the tag] down in [the] Men's Basics

[Department] [and] conceal[] the sunglasses in his pocket." He further observed defendant "conceal[] a pair of socks in his pants, exit[] the store and . . . g[e]t into his vehicle." Reagan then contacted the local police department, gave them defendant's license plate number, and "one of the officers that responded stopped [defendant] as he was . . . exiting the parking lot."

Reagan provided the responding officers with a printed a receipt for the sunglasses and socks showing a total value of $97.99, as well as a copy of the security camera video footage. At trial, he also identified defendant as the person he witnessed on the security cameras.

Officer Yock also testified with respect to the events that day. He noted that he was dispatched to Kohl's with another officer based on a report of a shoplifter who entered a vehicle with a specified license plate. After speaking with Reagan, both officers approached defendant who was "next to a Mercedes Benz," in the Kohl's parking lot. According to Yock, defendant's vehicle door was open, he "was wearing said sunglasses[,] and he was [having] difficulty starting his car." While Yock was looking in the vehicle for the socks that defendant allegedly stole, he "saw a small broken glass vial in plain view in the center console with greenish vegetative matter in it" consistent with marijuana.

The officers also discovered approximately forty vaping devices in the trunk of defendant's car.

Yock further testified that prior to being arrested, defendant voluntarily told him that he removed "the sunglasses from the store without paying for them and that he made a mistake." At a subsequent interview, and after his arrest, defendant was read his Miranda[1] rights, which according to Yock "he voluntarily waived." Defendant then told Yock that he went to Kohl's to exchange a pair of sneakers that he purchased earlier that day when he "saw the Nike sunglasses . . . placed them on his head . . . put a pair of socks in his pocket . . . [and] left without paying for either of them."[2]

According to Yock, defendant then advised police that "the marijuana that was in his vehicle was given to him by a male that came to his house [earlier that day]." Yock also identified defendant at trial as the person he approached in the parking lot, and further identified a lab report, subsequently introduced

---

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).

[2] Defendant did not challenge the admissibility of any of his statements in the municipal court, Law Division, or before us. We accordingly consider any objection to our consideration of defendant's statements by the municipal or Law Division judges waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding that "[a]n issue not briefed on appeal is deemed waived").

into evidence, confirming that the green matter he discovered in plain view in the center console consisted of 1.11 grams of marijuana.

On cross-examination, Yock stated that the vial containing what was later confirmed to be marijuana was "[a]bsolutely" in the car when he approached the vehicle. On redirect, he also testified that but for a failure of the interlock device in the vehicle, defendant "[a]bsolutely" would have left the scene.

On the second day of trial, defendant unsuccessfully moved to dismiss the drug-related charges arguing that police "had been called because of the shoplifting offense but there was certainly no reason to look into the vehicle to do anything pertaining to the vehicle," Yock "should have limited his observation to the merchandise[,] and [Yock] had no reason to go look further in the car." The court denied defendant's motion noting that Yock "testified that the vial was in plain view" and emphasized that defendant "had the sunglasses on his head."

Defendant also unsuccessfully attempted to call Wendy Sporman, defendant's mother, as a witness. The State objected and the court requested a proffer of her relevant testimony. Defendant stated that Ms. Sporman would testify that she was "the owner of the vehicle" and with respect to "complaints she has made against the Hillsborough Police Department." The defense further

stated that Ms. Sporman would testify that "it is her belief that . . . the Hillsborough Police Department is targeting [defendant]." Significantly, defendant did not provide any detail on the record regarding the alleged complaints that either she or defendant had with the Hillsborough Police Department or whether they involved any of the officers involved in defendant's arrest. Nor did counsel claim, as he did in the Law Division and before us, that Ms. Sporman would testify that the marijuana was hers, and not her son's. Further, at no point did defendant request to supplement the record with an affidavit or certification of Ms. Sporman attesting to any of these alleged facts.

In sustaining the State's objection to calling Ms. Sporman as a witness, the court noted that it watched the security camera footage entered into evidence and "it was clear what [defendant] did . . . [and the court was] not sure what relevance she has to the shoplifting event and . . . the fact that [defendant] possessed contraband in the center console, which was in plain view." The court further noted that the State was not made aware in a timely fashion that the defense would call Ms. Sporman as a witness and emphasized that had it known, the State would have sequestered her as she was in the court throughout the trial.

Defendant again unsuccessfully moved to dismiss the summons for possessing CDS in a motor vehicle stating that there was "no testimony that the

6

vehicle was on [a] highway . . . [a]nd it was parked in the parking lot."  In denying defendant's motion, the court noted that it has "testimony from an officer that says [defendant] was in his vehicle attempting to leave after committing the offense of shoplifting, allegedly, in his vehicle with contraband in the center console" and he was "attempting to start his vehicle, which was not being operated only because the interlock device malfunctioned, according to the testimony."  The court further stated that "[t]here was an attempted operation at the very least, given the testimony . . . [t]here was contraband in the vehicle and I think if you look at the statute, you have all the elements that you need for a conviction based on having drugs in the motor vehicle."  The court also agreed with the State's argument that according to the statute, "a parking lot for a store that is used by the public in a normal course is also considered a public road or highway for the purposes of our statutes."

In its March 18, 2019 oral decision, the court determined that based on "post-[Miranda] admissions . . . the testimony of the officer and Jordan Reagan, as well as the video, which [it] was permitted to watch," the State proved the shoplifting count beyond a reasonable doubt.  The court also found defendant guilty of the possession charges and imposed a custodial sentence along with fines and penalties.

Defendant appealed to the Law Division and in a July 29, 2019 written opinion and order, the Law Division judge denied defendant's appeal of his convictions but remanded the matter to the municipal court for resentencing. With respect to the municipal court's finding that the circumstances were sufficient to prove defendant unlawfully possessed marijuana within the meaning of N.J.S.A. 2C:35-10(a)(4), the Law Division judge noted that Yock testified that defendant provided police with a post-Miranda statement admitting the marijuana was in his vehicle and was given to him by a male that came to his house that same day, the State Laboratory analyzed the recovered substance and submitted a report indicating that the substance in defendant's possession was marijuana, and Yock identified the report and testified that the results revealed defendant was in possession of marijuana weighing 1.11 grams.[3]

The Law Division judge also concluded there was sufficient evidence to establish defendant possessed CDS while operating a motor vehicle on a highway. Specifically, the court noted that it could draw a reasonable inference

---

[3] Although defendant challenged the introduction of the State Laboratory report in the municipal court and Law Division, as with his statements to the police, see n. 2, supra, he has not challenged the admissibility of that report before us and we consider any objection is similarly waived. Sklodowsky, 417 N.J. Super. at 657.

that a parking lot is a public highway under N.J.S.A. 27:1B-3[4] as that statute provides that "public highways" include "rest areas" and "park-ride facilities." The court found those phrases to be "similar in nature to that of a parking lot" because they are "area[s] where pedestrians and motorists frequent" and have "lower speed limits due to the potential danger to pedestrians and motorists in these areas."

The court also relied on a Google Maps printout, submitted by the State without objection, showing that defendant's residence was at least three and a half miles away from the Kohl's parking lot, as well as defendant's statements to the police and testimony that he was attempting to start the car, to "reasonably conclude that [d]efendant transported the marijuana to the location where he was arrested." The Law Division judge concluded that defendant also had "constructive possession" of the CDS when it was discovered in plain view in the center console of the vehicle he was attempting to start.

Regarding the court's preclusion of Ms. Sporman as a witness, the Law Division judge agreed with the State that the municipal court properly denied the defense from calling her as a witness. Relying on State v. Spivey, 179 N.J.

---

[4] The Law Division mistakenly cited N.J.S.A. 27:113-3. The court likely meant to cite N.J.S.A. 27:1B-3, which defendant cites again on appeal for the definition of "public highway."

229, the court stated, "[a]s was proffered by [d]efendant, Ms. Sporman would have testified that Officer Yock and the Hillsborough Police Department were harassing her and [d]efendant and that she had an open [internal affairs] complaint against Officer Yock . . . [which] is not relevant or germane to the present matter."

The Law Division judge further determined Ms. Sporman not to be credible because she was "[d]efendant's mother and . . . she would be interested in the outcome of her son's trial and, considering what was proffered, she would tailor her testimony to benefit her son." Further, the court noted that Ms. Sporman's "[i]nternal [a]ffairs complaint against Officer Yock in 2013 . . . infers that she would testify unfavorably against him," and in light of the evidence against defendant including the surveillance video, testimony, and his post-Miranda statement, "even if [her testimony was] admitted during the trial, [it] would not have been credible or relevant." After thoroughly considering all of the evidence, the Law Division concluded the testimony of defendant's mother would not have "materially altered the outcome of the case."

Finally, the Law Division judge remanded the matter for resentencing. The court acknowledged that both the State and defendant agreed that the municipal court did not conduct a proper sentencing analysis noting that it

neither considered aggravating and mitigating factors nor did it state its reasons on the record before sentencing defendant to a fifteen-day custodial term. The Law Division judge also noted that the municipal court should have merged the fines, penalties, and license suspension for unlawful possession of marijuana with those resulting from defendant's operation of a motor vehicle on a highway while possessing CDS.

On appeal, defendant limits his challenge to the Law Division's July 29, 2019 order to the following arguments:

> POINT I
>
> THE STATE DID NOT PROVE DEFENDANT OPERATED A MOTOR VEHICLE ON A HIGHWAY WHILE IN POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE AND THE COURT BELOW SHOULD HAVE GRANTED DEFENDANT'S MOTION FOR A DIRECTED VERDICT.
>
> A.    THE STATE DID NOT PROVE OPERATION.
>
> B.    THE STATE DID NOT PROVE OPERATION ON A HIGHWAY.
>
> POINT II
>
> A RETRIAL IS REQUIRED WHEN THE COURT IMPROPERLY DENIED THE DEFENDANT'S ONLY WITNESS FROM TESTIFYING.

II.

An appeal of a municipal court conviction must first be addressed by the Law Division de novo. R. 3:23-8. The role of the Law Division is to make independent findings of facts and conclusions of law based on the record developed in the municipal court. State v. Avena, 281 N.J. Super. 327, 333 (App. Div. 1995) (citing State v. Johnson, 42 N.J. 146, 157 (1964)). The Law Division is required to decide the case completely anew on the record made before the municipal judge, "giving due, although not necessarily controlling, regard to the opportunity of the" judge to evaluate witness credibility. Johnson, 42 N.J. at 157; see also State v. Cerefice, 335 N.J. Super. 374, 382-83 (App. Div. 2000). The Law Division judge performs "an independent fact-finding function in respect of defendant's guilt or innocence" and must "make his [or her] own findings of fact." State v. Ross, 189 N.J. Super. 67, 75 (App. Div. 1983).

We review the Law Division's decision employing the "substantial evidence rule." State v. Heine, 424 N.J. Super. 48, 58 (App. Div. 2012). "Our review is limited to determining whether there is sufficient credible evidence present in the record to support the findings of the Law Division judge, not the municipal court." State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div.

2005) (citing Johnson, 42 N.J. at 161-62). We owe no deference to the trial judge's legal conclusions. Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)).

III.

In his first point, defendant argues that the evidence was insufficient to sustain the N.J.S.A. 39:4-49.1 charge because the State did not establish beyond a reasonable doubt that defendant operated his motor vehicle "on a highway" while possessing a CDS. Specifically, defendant argues that there is no basis on the record below to find that he so operated his vehicle as "[t]here was no testimony or evidence that [defendant] drove himself to the shopping mall . . . no testimony how and when the vehicle arrived at the shopping mall . . . [and] simply no evidence of operation; direct, circumstantial, or otherwise." He further maintains that "[t]he municipal court erroneously held that 'attempted operation' was sufficient . . . while the Law Division based its decision on evidence that was not in the record." We disagree with defendant that the evidence before the Law Division was insufficient to sustain defendant's convictions, albeit for slightly different reasons than those stated by the Law Division in its decision. See State v. Scott, 229 N.J. 469, 479 (2017) ("It is a long-standing principle underlying appellate review that 'appeals are taken from

13

orders and judgments and not from opinions . . . or reasons given for the ultimate conclusion.'" (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001))).

N.J.S.A. 39:4-49.1 provides that "[a] person shall not operate a motor vehicle on any highway while knowingly having in the person's possession or in the motor vehicle any [CDS] as classified in Schedules I, II, III, IV and V of the 'New Jersey Controlled Dangerous Substances Act.'" In order to establish guilt under the statute, the State must prove beyond a reasonable doubt that defendant: 1) operated a motor vehicle; 2) on a highway; 3) while in knowing possession of CDS located on the operator or in the vehicle. See 17A N.J. Practice, Municipal Court Practice §36:292 (Robert Ramsey) (rev. 3d ed. 2019); State v. Judge, 275 N.J. Super. 194, 201 (App. Div. 1994) ("[I]t is a serious traffic offense for a driver to 'operate a motor vehicle on any highway while knowingly having in his possession or in the motor vehicle[]any controlled dangerous substance . . .'" and "[m]arijuana is classified as a . . . [CDS]." (citations omitted)).

Here, there was substantial, credible evidence in the record to establish all elements of the offense, including operation of a vehicle on a highway. For reasons unclear in the record, both defendant and the Law Division relied on the

14

definition of "public highway" under the New Jersey Transportation Trust Fund Authority Act contained in N.J.S.A. 27:1B-3.[5]   Relying on that erroneous definition, the Law Division reasoned that a "parking lot" is a public highway because "rest areas" and "park-ride facilities" are substantially similar in nature to parking lots.

N.J.S.A. 39:4-49.1, however, explicitly states that a person shall not operate a motor vehicle "on any highway" and does not refer to "public highway."  N.J.S.A. 39:1-1 specifically defines "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."

---

[5]  N.J.S.A. 27:1B-3 defines "public highways" as:

> public roads, streets, expressways, freeways, parkways, motorways and boulevards, including bridges, tunnels, overpasses, underpasses, interchanges, rest areas, express bus roadways, bus pullouts and turnarounds, park-ride facilities, traffic circles, grade separations, traffic control devices, the elimination or improvement of crossings of railroads and highways, whether at grade or not at grade, bicycle and pedestrian pathways and pedestrian and bicycle bridges traversing public highways and any facilities, equipment, property, rights of way, easements and interests therein needed for the construction, improvement, and maintenance of highways.

As noted, we conclude the reasonable inferences from the evidence before the Law Division supports the court's conclusion that defendant was operating a vehicle on a highway, with CDS in the vehicle. The statute does not state that defendant must be on a highway when stopped, but only that he operated a vehicle on a highway with drugs inside the vehicle. In that regard, there was sufficient direct and circumstantial evidence to support the court's determination that defendant's conduct satisfied that criteria.

First, defendant admitted to Officer Yock that he visited Kohl's earlier in the day and bought a pair of sneakers that he then came back to return. He also admitted that he received the CDS from someone at his residence prior to the shoplifting incident. It is reasonable to conclude that defendant would have had to drive on a highway (public or otherwise), to arrive at Kohl's where police made the plain-view observation of the CDS in his vehicle. Indeed, there simply was no way for defendant to have arrived at the Kohl's parking lot without having traversed on a public road or way. See State v. Emery, 27 N.J. 348, 356 (1958) (holding that a trial court may rely on direct and circumstantial evidence to determine whether the elements of the offense are met); see also State v. George, 257 N.J. Super. 493, 497 (App. Div. 1992) (proving operation of a car may be done by direct or circumstantial evidence so long as it is competent and

meets the standards of proof). Defendant's argument that the evidence just as likely indicates that some other individual drove him to the shopping mall or parked the vehicle for him to retrieve at a later time is nothing more than supposition unsupported by any record evidence or reasonable inference sufficient to challenge the State's direct proofs and reasonable inferences.

As to the Law Division's use of Google Maps showing the distance between defendant's residence and the parking lot, defendant notably did not object to the State's use of such evidence when it was introduced. While we acknowledge that typically the record before the Law Division is restricted to that considered by the municipal court, Avena, 281 N.J. Super. at 333 (citing Johnson, 42 N.J. 157), "[i]f a defendant, as here, does not object or otherwise preserve an issue for appeal at the trial court level, we review the issue for plain error . . . [and] must disregard any unchallenged errors or omissions unless they are 'clearly capable of producing an unjust result.'" State v. Santamaria, 236 N.J. 390, 404 (2019) (quoting R. 2:10-2). Under the circumstances here, we find no plain error with the Law Division's consideration of the Google Maps document.

Even were we to conclude that the Law Division erroneously considered the Google Maps exhibit, in light of defendant's admission that he received the

CDS at his home and that he traveled to and from Kohl's that day, as well as the fact that it is clear that he does not reside in either the Kohl's store or its parking lot, we are satisfied that the other proofs and inferences are sufficient to sustain the convictions. Any argument by defendant that someone other than him that no one saw, spoke about, or mentioned, drove the vehicle to Kohl's and gave him the keys to the vehicle he was seen attempting to start, are nothing more than fanciful arguments that are insufficient to challenge that the State's proofs and reasonable inferences that established defendant's guilt beyond a reasonable doubt.

## IV.

Finally, we disagree that a new trial is warranted because the municipal court precluded defendant from calling his mother from testifying, again for slightly different reasons than the Law Division. See Scott, 229 N.J. at 479.[6]

---

[6] Specifically, we part company with the Law Division to the extent it based its decision, in whole or in part, on adverse credibility findings of Ms. Sporman as she did not testify in either the municipal or the Law Division proceedings. As noted, on de novo appeals, the Law Division judge must make independent findings of fact and conclusions of law but defers to the municipal court's credibility findings. State v. Robertson, 228 N.J. 138, 147, (2017). A court should refrain, however, from making credibility determinations without the opportunity to see the witness or hear testimony. See State v. Porter, 216 N.J. 343 (2013) (finding that the proper way to determine a witness's credibility was to assess the testimony on direct and cross-examination and that "[t]here is no

Defendant maintains that his mother "was the registered owner of the vehicle and had filed complaints against the Hillsborough Police Department and the arresting and investigating officer in this case," "[s]ome of those incidents involved the [d]efendant," and that "[b]oth lines of inquiry are relevant and admissible to challenge the State's charges." Defendant also claims that he should have been afforded the opportunity to present his mother as a witness "to testify that the marijuana recovered was in fact hers and not [his] . . . [e]ven if such a fact is contradicted by [Officer Yock's] testimony . . . [because] [d]efendant still has the right to offer evidence of third party guilt."[7]

Moreover, defendant argues that Ms. Sporman "should have been permitted to testify in the form of an opinion regarding the credibility of the State's witness, the bias of the State's witness, [and] motive by the State's witness to lie, as well as offering positive character evidence in support of . . .

substitute for placing a witness on the stand and having the testimony scrutinized by an impartial factfinder"). Thus, it was improper for the Law Division to base its decision on adverse credibility determinations of Ms. Sporman as she did not testify before either the municipal court or the Law Division.

[7] We note that in the municipal court, defendant never proffered that his mother would testify that the drugs belonged to her. In addition, as to the complaints she had with the Hillsborough Police Department, defendant's counsel only vaguely claimed that Ms. Sporman made complaints against them in the past and that she believed they were targeting defendant.

19

[d]efendant."  Defendant contends that the credibility of Officer Yock was an issue of "paramount importance" because there were no other witnesses and his plain view observations at the scene were admitted unchecked.  He concludes that without Ms. Sporman's testimony, defendant could not rebut Yock's version of events because such testimony would be "self-serving and likely rejected by the fact-finder."

The Supreme Court has held that a defendant must be afforded "a meaningful opportunity to present a complete defense."  Crane v. Kentucky, 476 U.S. 683, 690 (1986).  Calling or compelling witnesses to testify in his defense is a fundamental right of the accused protected by the due process clause of the Fourteenth Amendment.  Chambers v. Mississippi, 410 U.S. 284, 302 (1973); Webb v. Texas, 409 U.S. 95, 98 (1972); see also State v. Feaster, 184 N.J. 235, 250 (2005) ("An accused in a criminal case has a constitutional right to present witnesses in his defense, pursuant to the due process and the compulsory process provisions of the federal and state constitutions.").

A defendant is not required "to provide evidence that substantially proves the guilt of another, but to provide evidence that creates the possibility of reasonable doubt."  State v. Perry, 225 N.J. 222, 238 (2016) (quoting State v. Cotto, 182 N.J. 316, 332 (2005)).  "Indeed, even if there is no evidence linking

another specific suspect to the crime, we 'have recognized that evidence that tends to create reasonable doubt that someone else, generically, rather than defendant, committed the offense, is admissible.'" Id. at 238-39 (quoting State v. Loftin, 146 N.J. 295, 345 (1996) (citation omitted)).

Considering first defendant's unsupported argument that the marijuana in the vehicle belonged to his mother, we note that N.J.S.A. 39:4-49.1 provides that a person "shall not operate a motor vehicle on any highway while knowingly having in the person's possession or in the motor vehicle any [CDS]." (Emphasis added). The record before the Law Division fully supported its finding that defendant had constructive possession of the marijuana while operating the vehicle.

Constructive possession arises out of an individual's conduct with regard to the subject item and is "a function of the relationship and conduct of the parties." State v. Schmidt, 110 N.J. 258, 268, 272 (1998). Immediate control and dominion over an object are not required; it must be shown a defendant had the capacity, by direct or indirect means, to gain almost immediate physical control, and the ability to affect the item during the time in question. Id. at 270-71; see also State v. Brown, 80 N.J. 587, 597 (1979) (finding constructive possession does not require "[p]hysical or manual control of the proscribed item

. . . as long as there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists").

Constructive possession, however, "cannot be based on mere presence at the place where contraband is located. There must be other circumstances or statements of defendant permitting the inference of defendant's control of the contraband." State v. Whyte, 265 N.J. Super. 518, 523 (App. Div. 1992). "A determination of constructive possession is fact sensitive and requires careful scrutiny by a court . . . ." State v. Hurdle, 311 N.J. Super. 89, 96 (App. Div. 1998). A court must consider "the totality of the circumstances, including defendant's presence at the location of the [contraband], as well as other factors before . . . an inference of constructive possession [may] be drawn." Ibid.

Here, Yock testified that the CDS was in plain view in the center console of the vehicle defendant was attempting to start when they approached him. As noted above, defendant's mere presence in that vehicle containing CDS does not necessarily rise to the level of constructive possession. When his presence in that vehicle is coupled with defendant's statement to Yock that "the marijuana that was in his vehicle was given to him by a male that came to his house," however, the Law Division judge's conclusion that defendant had constructive possession of the CDS was fully supported by the record, and Ms. Sporman's

22

unsupported claims that the marijuana belonged to her would not affect the court's finding that defendant violated N.J.S.A. 39:4-49.1.

Next, defendant maintains that pursuant to N.J.R.E. 404(a)(1), he had the right to offer character evidence regarding any of his pertinent character traits, and under N.J.R.E. 608, he was permitted to present opinion testimony regarding a witness's reputation for lack of truthfulness in the community, and the preclusion of his mother's testimony constituted reversible error. We disagree and instead concur with the Law Division that Ms. Sporman's proposed testimony was neither "relevant [n]or germane."

"Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998). We uphold the trial court's rulings "absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." Perry, 225 N.J. at 233 (quoting State v. Brown, 170 N.J. 138, 147 (2001)). If an abuse of discretion is found, "we must then determine whether any error found is harmless or requires reversal." State v. Prall, 231 N.J. 567, 581 (2018). Like the plain error standard, harmful error will not lead to reversal unless it is "clearly capable of producing an unjust result." R. 2:10-2. An error will be found "harmless" unless there is a reasonable doubt that the error contributed to the verdict. State v. Macon, 57

N.J. 325, 338 (1971). This is true even if the error is of constitutional dimension. Ibid.; State v. Slobodian, 57 N.J. 18, 23 (1970).

Under Rule 404(a)(1), "pertinent" character traits of a defendant are admissible if offered by the accused or by the prosecution to rebut the accused's assertion of his or her pertinent good character traits. See N.J.R.E. 404(a)(1); State v. Abril, 444 N.J. Super. 553, 560 (App. Div. 2016). Pertinent evidence "must relate to a character trait directly involved and apply to a relevant time and place in the defendant's life." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 3 on N.J.R.E. 404 (2019) (citing State v. Reyes, 50 N.J. 454, 468 (1967); State v. Raymond, 46 N.J. Super. 463, 467 (App. Div. 1957); State v. Steensen, 35 N.J. Super. 103, 106-07 (App. Div. 1955)).

As our Supreme Court explained in Scott, N.J.R.E. 608 "preclude[s] the use of specific instances of conduct to attack the credibility of a witness" and "explicitly excludes specific instances of conduct as a means of proving a character for untruthfulness, permitting only opinion or reputational evidence." 229 N.J. at 481, 483. Rule 608 imposes a complete ban on the use of specific instances of conduct and "bars not only the use of extrinsic evidence but also cross-examination into specific instances of misconduct. Id. at 488 (Rabner, C.J., concurring).

Our evidence rules "bar 'the use of prior instances of conduct to attack the credibility of a witness for two essential reasons:  to prevent unfairness to the witness and to avoid confusion of the issues before the jury.'" Scott, 229 N.J. at 498 (quoting State v. Guenther, 181 N.J. 129, 141 (2004)) (Albin, J., concurring).  Furthermore, N.J.R.E. 608 "was designed to prevent unfair foraging into the witness's past" and to prevent "wide-ranging collateral attacks on the general credibility of a witness [that] would cause confusion of the true issues in the case." Guenther, 181 N.J. at 141-42.

It appears from the Law Division's description of Ms. Sporman's letter to the Hillsborough Police Department that her testimony was intended to address specific instances of how Officer Yock treated her and her family in the past and that she filed an internal affairs complaint against Officer Yock in 2013.[8]

---

[8] The Law Division's opinion describes the letter as follows:

> According to defendant, "On March 17, Wendy Sporman authored a three-page letter to Hillsborough Police Sergeant Carney detailing her internal affairs investigation into Officer [] Yock and her personal feelings about how the Hillsborough [P]olice [D]epartment has treated her and her family, including [] filing [] false allegations against her and her son." Defendant further explains that "this letter was provided to counsel for both parties in advance of Ms. Sporman's testimony and sets forth a detailed account

25

Although defendant elected not to cross-examine Officer Yock on any of these alleged incidents, which apparently took place years before defendant's arrest, defendant's merits brief similarly indicates that Ms. Sporman sought to testify regarding "complaints against the Hillsborough Police Department and [Officer Yock]," that "[s]ome of those incidents involved . . . defendant," and about her internal affairs complaint against him. It is clear from the limited record presented that Ms. Sporman's proposed testimony involved improper specific instances of bad conduct as opposed to proper opinion evidence related to truthfulness permitted by N.J.R.E. 608.

As to the admissibility of her proposed testimony under N.J.R.E. 404(a)(1), defendant's merits brief merely states that defendant "had an absolute right to call [her] as a character witness in support of his positive character of a pertinent trait pursuant to [Rule 404(a)(1)]." We assume from this description

---

of her opinion that her son was being targeted by Hillsborough Police, but more specifically by Officer [] Yock who she filed an IA complaint against in 2013."

We note that because "our consideration is generally limited to the record on appeal, namely the appendices and transcripts," see W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 460 (App. Div. 2008), we could have rejected defendant's N.J.R.E. 608 arguments on procedural grounds as he did not include the letter to the Hillsborough Police Department in the record on appeal, frustrating an appropriate appellate review of the issue. For purposes of completeness, however, we address defendant's arguments on the merits.

that Ms. Sporman would have testified that defendant had an honest and truthful character. As noted, however, defendant did not dispute at any stage of the proceedings that he made the statements to the police, effectively admitting constructive possession of the marijuana which, based on the circumstantial evidence, he transported on a highway from his home to the Kohl's parking lot. Under these circumstances and based on the record before us, we cannot conclude that the court abused its discretion in precluding defendant from belatedly calling Ms. Sporman from testifying.

Finally, even were we to assume that the Law Division abused its discretion on these evidentiary issues, we conclude any error was harmless as there is not a reasonable doubt that the error contributed to the verdict. See Macon, 57 N.J. at 338; see also State v. Gillespie, 208 N.J. 59, 93 (2011) (finding harmless error when "overwhelming proof" established guilt "independent of" improperly admitted evidence). Defendant was witnessed on security camera footage taking sunglasses and socks from Kohl's without payment, he was wearing the stolen sunglasses when police approached him in the parking lot, and the CDS was found in plain view when they searched his vehicle for the remaining merchandise. Defendant also admitted to police officers that he both stole the merchandise and that he received the marijuana from someone earlier

that day and returned to Kohl's where he was seen attempting to start the vehicle. Consequently, no "manifest denial of justice resulted" from precluding Ms. Sporman's testimony as an error was not "clearly capable of producing an unjust result." State v. Kuropchak, 221 N.J. 368, 385-86; R. 2:10-2.

V.

We note that the Law Division's failure to sentence defendant affected the finality of the July 29, 2019 order. See Grow Co. v. Chokshi, 403 N.J. Super. 443, 457-58 (App. Div. 2008) (stating generally, "only an order that finally adjudicates all issues as to all parties is a final order and . . . an interlocutory appeal is permitted only by leave of our appellate courts"). Because the matter was fully briefed and is otherwise ready for disposition, we exercised our discretion to rule on the appeal's merits. Caggiano v. Fontoura, 354 N.J. Super. 111, 125 (App. Div. 2002).

In sum, we affirm the Law Division's rulings with respect to defendant's convictions. We are, nevertheless, compelled to remand the case for sentencing. "The Law Division, if it finds a defendant guilty after a trial de novo from a municipal court conviction, is required to impose a new sentence." State v. Moran, 202 N.J. 311, 325 (2010); R. 3:23-8(e). The new sentence must be no greater than that imposed by the municipal court. See State v. Loce, 267 N.J.

Super. 10, 14 (App. Div. 1993) (citing State v. De Bonis, 58 N.J. 182, 188-89 (1971)). Here, the Law Division did not impose a new sentence and instead remanded the matter to the municipal court for resentencing to consider, among other issues, the aggravating and mitigating factors, and to state its reasons on the record for sentencing defendant to a fifteen-day custodial term.

To the extent we have not addressed any of defendant's arguments, it is because we have determined that they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5410-18T1