**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1425-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PATRICK HEALY, a/k/a PAT,

    Defendant-Appellant.

_____

> Submitted December 19, 2018 – Decided February 11, 2020
>
> Before Judges Fuentes and Vernoia.
>
> On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 15-08-0563.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Staci L. Scheetz, Senior Assistant Prosecutor, and Monica Bullock, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

A Gloucester County Grand Jury indicted defendant Patrick Healy on one count of fourth degree driving a motor vehicle while his driver's license was suspended for two or more convictions of driving while intoxicated (DWI),[1] N.J.S.A. 2C:40-26(b). Defendant was also charged with the disorderly persons offense of possession of drug paraphernalia (a metallic pipe), with intent to use, N.J.S.A. 2C:36-2, driving with an open container of alcohol, N.J.S.A. 39:4-51, failing to maintain a traffic lane, N.J.S.A. 39:4-88, and driving with a suspended license, N.J.S.A. 39:3-40.

The jury trial on the fourth degree criminal offense began on August 2, 2016 and ended on August 4, 2016. The jury found defendant guilty as charged. More than two months after the jury trial, the judge conducted a bench trial on the disorderly persons offense and the Title 39 charges, and found defendant guilty of possession of drug paraphernalia, driving with a suspended license, and failure to maintain a traffic lane. The judge acquitted him on the Title 39 charge of driving with an open container of alcohol.

On October 14, 2016, the judge sentenced defendant on his fourth degree conviction to a one-year term of probation conditioned upon serving 180 days

---

[1] N.J.S.A. 39:4-50.

A-1425-16T3

without parole in the Gloucester County Correctional Facility as mandated by N.J.S.A. 2C:40-26(c). He also suspended defendant's driver's license for six months, as required by N.J.S.A. 39:3-40(d), and imposed the mandatory fines and penalties.

In this appeal, defendant argues the trial judge committed reversible error by: (1) admitting a recording of a 9-1-1 call in which the individual who reports the one-car accident at issue here claimed a man, who was subsequently identified as defendant, was "standing outside of [the car], but . . . looked like . . . he might have been drunk or something;" and (2) allowing a police officer who responded to the scene of the accident to testify that he recovered from defendant's person a pipe commonly used to smoke marijuana. Defendant argues this evidence should have been excluded as prejudicial and devoid of probative value. According to defendant, these ostensible errors by the trial judge violated his right to a fair trial.

After considering the record developed before the trial court and the evidence presented to the jury, we reject defendant's arguments and affirm.

I

At around midnight on December 2, 2014, a 9-1-1 dispatcher who covers Monroe Township received two emergency calls reporting a man standing

3

outside of what appeared to be a one-car accident on Coles Mill Road. The first caller was Thomas Orselli. He identified the specific location of the accident and said there was "a car that's sideways on the road." Orselli also reported the presence of a person at the scene who "looked like he might have been drunk or something." When the 9-1-1 dispatcher asked him if the vehicle had "hit anything[,]" Orselli responded: "when I was going by[,] it looked like there was some kind of a skunk out in the road." The prosecutor played to the jury the recording of Orselli's 9-1-1 call in its entirety.[2]

Monroe Township Police Officer Maxwell Janofsky reported to the scene of the accident approximately ten minutes after the 9-1-1 calls were placed. His marked patrol car is equipped with an "MVR" which, as Janofsky explained,

---

[2] The State called Carl Vandergrift, the operations supervisor of the County and Gloucester Emergency Response Center, to explain to the jury how the 9-1-1 emergency response system operates. Vandergrift also authenticated the DVD audio recordings of the 9-1-1 calls the State played to the jury. The trial judge permitted the prosecutor to provide the jurors with a "transcript of the 9-1-1 recordings from the two passerby[s] that observed" the scene of the one-car accident. Without objection from defense counsel, the trial judge gave the jury the following instructions: "Ladies and Gentlemen, you're going to be given a transcript for the purposes of an aid. That's just to help you in case you don't quite hear or to help you be able to understand what's being said. The transcript itself is not evidence. It's just an aid."

A-1425-16T3

stands for "motor vehicle recorder." According to Janofsky, at the time of this accident he "did not have a mic that was hooked up to the MVR."

Upon arrival at the scene, Janofsky "observed a vehicle parallel to the street" on a two lane road and "mailbox debris and a[n electric] pole that was damaged on the side of the road" in a residential neighborhood. The vehicle sustained "heavy frontend damage." Janofsky saw defendant "seated in the passenger seat at the time." Janofsky also saw damage to the driver-side of the vehicle, presumably caused by the collision with the electric pole. Janofsky testified that defendant had difficulty "putting coherent sentences together." He also had "a large laceration on top of his head[,]" which according to Janofsky, was "consistent with striking the windshield."

Janofsky's comment about the cause of defendant's head injury prompted an immediate objection from defense counsel. At a sidebar conference, defense counsel argued the witness did not establish a foundation to support his opinion about what caused defendant's head injury. The prosecutor argued the witness' testimony was supported by the car's "severe frontend damage" and the damage to the windshield. The judge accepted the prosecutor's argument, overruled defense counsel's objection, and denied her request to strike this part of Janofsky's testimony.

A-1425-16T3

The prosecutor resumed her direct examination of Janofsky with the following exchange:

> Q. Okay. So when you indicated he may have hit the windshield you don't know if he possibly hit something else inside the car or anything else?
>
> A. Correct.
>
> Q. Okay. Now, once you assess that scene, what did you do with him?
>
> A. At that point once I saw the laceration and he couldn't put his coherent sentence together we called for an ambulance because medical treatment comes first at that point.
>
> Q. And did you ask for his identification?
>
> A. I asked him for his credentials, his driver's license, registration, insurance card. He couldn't provide any of that. Without knowing who he was I patted him down to find his ID. <u>As I was patting him down I located his ID and a metallic pipe commonly used for smoking marijuana</u>.
>
> [(Emphasis added).]

Defense counsel objected; the trial judge promptly sustained the objection and gave the following sua sponte curative instruction to the jury: "You're to strike that last part of the response, the commonly used for the smoking of marijuana from your consideration." The record shows that through Janofsky's testimony, the State established defendant was unable to produce his driver's

6

license, automobile insurance identification card, or the vehicle registration card.

Despite the judge's admonition to the jury concerning the smoking pipe, the prosecutor continued to pursue this line of questioning with Janofsky:

> Q. You indicated that it was a small pipe that you found in his pocket?
>
> A. Yes.
>
> Q. And is it common just for -- is it paraphernalia?
>
> A. Yes.
>
> DEFENSE COUNSEL: Objection, Your Honor. Can we have a sidebar, Judge?

At this second sidebar conference, defense counsel objected to Janofsky's "conclusion" that the pipe was "paraphernalia" and "that the pipe is commonly used to smoke marijuana." The judge noted that he had previously "struck" from the record the notion that the pipe "is commonly used to smoke marijuana" and reminded the prosecutor that he had previously ruled the State had to first "lay a foundation" that Janofsky is "able to testify regarding paraphernalia." The prosecutor argued that she established the witness' competency to testify in these matters when she questioned him regarding "his training [and] experience" as

an instructor for the "New Jersey LEAD,[3]" DARE, and his involvement with the "K-9 narcotic detection dog." The judge was not persuaded by the prosecutor's response.

Defense counsel asked the judge for "a limiting instruction right now [for] . . . the jury not to consider what was just said because there has been no foundation that he is an expert to say such a thing." After discussing the issue with the parties at length in this second sidebar conference, the judge sustained defense counsel's objection but declined to give any additional instructions to the jury.

The prosecutor resumed her direct examination of Janofsky by asking him: "How many paraphernalias [sic] can you identify or have you been trained to identify?" Although he could not give an exact number, Janofsky claimed that based on his "multiple investigations" that resulted in "convictions[,]" he "can name pretty much anything you put in front of [him] and what it could be used for." In response to the prosecutor's question, Janofsky confirmed that the pipe

---

[3] Earlier in his direct testimony, Janofsky explained that New Jersey LEAD is a program "[t]o educate the younger generations about drug abuse and awareness, to what -- how to stay away from it and other programs they can go into rather than going down the path of CDS."

can be used for "ingesting" illicit drugs. At this phase of the trial, the State had not produced the actual pipe Janofsky allegedly found on defendant's person.

According to Janofsky, defendant told him the accident happened when "he swerved to miss an animal." However, Janofsky testified that defendant told him he was not driving the car at the time of the accident and claimed there were three other "gentlemen" in the car. Janofsky testified that defendant identified the driver of the car by three different names – "Michael . . . John[,] and . . . Robert." An ambulance transported defendant to Cooper Trauma Hospital where he was treated for a head injury. He was hospitalized for approximately two weeks.

Defendant did not testify in his own defense. He called his younger brother and two life-long friends as character witnesses. Defendant based his trial strategy on the State's alleged inability to prove beyond a reasonable doubt that he was the driver of the car. Defense counsel framed the issue clearly in her opening statement to the jury:

> Now, the State has indicated it has two witnesses. Neither of those witnesses is going to testify that they actually saw my client operating a motor vehicle. The State is not going to be presenting witnesses that say they saw Mr. Healy in the driver's seat operating a motor vehicle. That's not going to be the testimony. The testimony is going to be that Mr. Healy exited his

vehicle outside of the passenger side of the car. I'm going to address that more thoroughly in my closing.

But I want all of you to remember and keep that in mind. He's actually in the passenger side of the car and he is not seen operating a motor vehicle by any of the State's witnesses or any witnesses at this trial. So I want you to consider that and I will readdress that in my closing when I'm asking that all of you find Mr. Healy not guilty. Thank you.

Defense counsel noted the State did not call as a witness the person who made the first 9-1-1 call to report the accident. She emphasized that when Janofsky arrived at the scene, he saw defendant seated in the passenger side of the car. Counsel argued this was corroborated by the video taken by the patrol car MVR.

We saw on the MVR that it was raining outside. It was nighttime. It was dark out and what do you see on the MVR? You see the officer pull up and Mr. Healy is not seated in the driver seat. You do not see that. You see that Mr. Healy exits through the passenger seat of the car and not the driver seat.

And I asked the officer whether or not he put that in his police report. And no, he didn't think it was important to put in his police report that the person who was alleged to have been driving is found in the passenger seat of the vehicle.

Defense counsel also attacked the State's introduction of testimony about a pipe found on defendant's person, which it characterized as paraphernalia allegedly used to smoke illicit drugs.

> Now, the State made a big deal about bringing up this pipe. There's a pipe that's found on Mr. Healy and you heard testimony that anyone can buy this pipe. You can just buy it in a store.
>
> He wants you to believe that it's used for paraphernalia, but there's no allegation of any illegal drugs found. There's no smell of marijuana as he had indicated. He didn't find any marijuana and this is a pipe that can be bought in a store by anyone. Any citizen off the street can walk into the store and buy this pipe and perhaps there is an innocent use for this pipe.

Finally, defense counsel noted that the second 9-1-1 caller, a woman who did not give her name, "said she was in the house right by the accident." Counsel argued the police should have made some attempt to locate her residence – "why not just knock on a couple doors that are in that area right in front of the accident scene?" Counsel concluded her closing argument by returning to the issue she stressed in her opening statement:

> The State has to prove this beyond a reasonable doubt that Mr. Healy was driving and they have failed to do that. If you have any doubt as to whether or not Mr. Healy was driving, then you must find him not guilty and that is what I'm requesting of all of you today. Thank you.

The jury found defendant guilty of fourth degree driving a motor vehicle while his driver's license was suspended for two or more DWI convictions. Against this backdrop, defendant raises the following argument.

POINT I

THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF A 9-1-1 CALLER'S OPINION THAT MR. HEALY MAY HAVE BEEN INEBRIATED AND THAT POLICE CLAIMED TO HAVE LOCATED MARIJUANA PARAPHERNALILIA AND AN OPEN CONTAINER AT THE SCENE OF THE ACCIDENT. THAT EVIDENCE WAS NOT ONLY IRRELEVANT, AND THEREFORE NOT PROBATIVE, BUT IT UNFAIRLY PREJUDICED MR. HEALY. U.S. CONST. AMENDS. V, VI, AND XIV; N.J. CONST. ART. I, PAR. 9, 10. (Partially raised below).

Defendant's argument lacks sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(2). Here, the State was required to prove beyond a reasonable doubt that: (1) that defendant knowingly operated a motor vehicle; and (2) he operated the vehicle while his driver's license was suspended or revoked for a second or more DWI convictions. N.J.S.A. 2C:40-26(b). Defendant does not dispute that the State met its burden of proof as to all the elements of this offense.

"[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Scott, 229 N.J. 469, 479 (2017) (quoting Estate

A-1425-16T3

of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)).  This court will uphold evidentiary rulings made by a judge in the course of a trial absent evidence showing an abuse of discretion or a clear error of judgment. State v. Brown, 170 N.J. 138, 147 (2001).  We discern no legal basis to conclude the evidentiary rulings defendant challenges in this appeal impugned the reliability of the jury's verdict or undermined the fairness of the trial.  The judge promptly and effectively responded to defense counsel's objections and, where warranted, provided an appropriate curative instruction to the jury to counteract any possible prejudice.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION