**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5004-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

STEVEN L. BOOKMAN, a/k/a
SHAWN L. FORREST, STEVEN
BOOKMAN, SHAWN FORREST,
STEVEN SHARP, WILLIAM
BOOKMAN, LAMONT BOOKMAN,
and SHAW FORREST,

    Defendant-Appellant.

_____

Submitted July 14, 2020 – Decided July 29, 2020

Before Judge Sabatino and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-07-2072.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan Brody, Assistant Deputy Public Defender, of counsel and on the brief).

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Linda Anne Shashoua, Special

Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

Appellant filed pro se supplemental briefs.

PER CURIAM

Tried by a jury, defendant Steven L. Bookman was found guilty of second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b) (count one); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count two). The jury acquitted defendant of third-degree hindering apprehension, N.J.S.A. 2C:29-3(b) (count three). In a second phase of the trial, the jury also convicted defendant of a second-degree "certain persons" offense, i.e., possession of a firearm by a convicted felon, N.J.S.A. 2C:39-7(b) (count four).

At sentencing, the court denied as untimely the State's motion for an extended term. The court imposed an aggregate custodial sentence of thirteen years. The sentence consisted of an eight-year term with a four-year parole eligibility period on count one, a concurrent eighteen-month term on count two, and a consecutive five-year term with a five-year parole disqualifier on count four.

On appeal, defendant raises the following points in his counsel's brief:

POINT I

THE PROSECUTOR'S ACTS OF MISCONDUCT
DEPRIVED DEFENDANT OF HIS
CONSTITUTIONAL RIGHTS TO DUE PROCESS
AND A FAIR TRIAL. (Not Raised Below).

POINT II

THE TRIAL JUDGE ERRED IN REFUSING TO
GRANT DEFENSE COUNSEL'S REPEATED
REQUESTS FOR ADJOURNMENT.

POINT III

THE TRIAL JUDGE ERRED IN IMPOSING A
CONSECUTIVE SENTENCE FOR THE CERTAIN
PERSONS OFFENSE.

In a pro se supplemental brief, defendant also argues the jury charges for

hindering apprehension and unlawful possession of a weapon were improper,

that the jury charges as a whole failed to appropriately conform to his version

of events, and that the court erred in denying his motion to suppress evidence.

Having fully considered these arguments, we affirm defendant's

convictions but remand for resentencing, at which time the court shall eliminate

the consecutive sentence imposed for the "certain persons" violation.

I.

The State's proofs at trial showed that a Camden police detective

encountered defendant in the early evening hours of May 9, 2016 after a motor

vehicle stop. The detective, who was on uniformed patrol in a marked police car, stopped the vehicle after observing a faulty brake light.

When the detective requested the driver to identify himself, defendant initially told the detective falsely that he was "Lamont Smith," and did not produce any documents with his identification. The detective then conducted a computer search of that name, which came up negative.

The detective approached the vehicle again. By that point, the detective recognized defendant, with whom he had previous dealings. Defendant apologized and then told the officer he was "William" Bookman and also stated he believed he had an outstanding arrest warrant.

As the detective again returned to his patrol car to verify the new information, defendant opened the driver's side of the car and ran off. Meanwhile, another Camden County police officer arrived as backup. That officer pursued defendant on foot, repeatedly advising him to stop. The officer chased defendant through a yard and an alleyway. Defendant then ran through an abandoned lot, doubled back, and jumped a fence. The detective got out of his patrol car and ordered defendant to the ground, but he ignored the command, tussled with the detective, and then continued to flee.

 A-5004-17T3

Shortly thereafter, the officers apprehended defendant on the ground in an alleyway. The whole episode lasted an estimated twenty or thirty seconds.

The officers brought defendant back to the patrol car and searched him incident to his arrest. They found a loaded semi-automatic nine-millimeter handgun in his pants pocket. Defendant, who was breathing heavily, was transmitted to the local hospital, where he apparently revealed his actual first name, Steven.

Initially, the police issued motor vehicle summonses in the name of "William" Bookman, which happens to be the name of defendant's brother. These summonses were dismissed, as the detective realized that William Bookman was "a lot taller" than defendant and could tell the difference between the brothers "without a doubt."

Both the detective and the back-up officer testified at trial and explained their apprehension of the car driver. Defendant's theory at trial was that the State had accused the wrong person.

Defendant presented testimony from his brother William, who claimed he had been driving defendant's car, had given the false name, and had run away from the officers. Defendant further called to the stand his uncle, who testified that defendant had been at his house that day to do yard work.

5

Finally, defendant himself testified. He denied that he had been driving the car, lied to the detective about his identity, ran away from the police, and possessed a gun. He claimed he had been at his uncle's house to take out the trash while his brother William had asked to borrow the car. Although defendant admitted to being the person that the police arrested in the alleyway, he attributed his heavy breathing upon arrest to mere nervousness.

## II.

## A.

We first address defendant's argument that he was deprived of a fair trial because of the form of certain questions the prosecutor posed in cross-examining defendant at trial about his prior criminal record and certain comments the prosecutor made in closing argument. Because neither of these issues were raised below, we apply a plain error standard of review to the contentions. State v. Macon, 57 N.J. 325, 336 (1971); see also R. 2:10-2 (prescribing that appellate courts generally should not provide relief on issues not raised below, unless they are shown to be "clearly capable of producing an unjust result"). We discern no such plain error and no deprivation of a fair trial.

As a general matter, when defense counsel fails to object to a prosecutor's remarks during trial, courts presume that counsel did not perceive the remarks

were unduly prejudicial within the atmosphere of the trial.  State v. Irving, 114 N.J. 427, 444 (1989).  Counsel's failure to object also deprives the trial judge of the chance to take any curative action.  Ibid.  That said, appellate courts retain the authority to set aside guilty verdicts if a defendant demonstrates on appeal that a prosecutor's conduct was "clearly and unmistakably improper" and substantially prejudiced the defendant's right to have the jury fairly evaluate the merits of the case.  State v. Timmendequas, 161 N.J. 515, 575 (1999).  No such demonstration has been made here.

The first incident arises out of the prosecutor's cross-examination of defendant concerning his prior criminal record.  Defendant does not dispute that N.J.R.E. 609 allows the State to present evidence of prior convictions to impeach the credibility of a testifying witness.  Nor does defendant contest the admissibility of his prior convictions for that impeachment purpose.  In particular, the record discloses that defendant has five prior adult convictions, three of which involved drug-dealing activity.

Defense counsel first opened the door to the jury's consideration of his prior convictions by raising the topic in his direct examination.  Then, on cross-examination, defendant minimized his criminal background. He further claimed that he did not know what a gun's magazine is, that he did not recognize the

A-5004-17T3

nine-millimeter gun seized from his pants pocket, and was unaware that he needed a permit to carry the weapon. He claimed he was "not into" guns.

In response to defendant's testimony claiming his naivete, the prosecutor asked him a series of questions designed to impeach those contentions. Defendant acknowledged that he had been previously convicted of third-degree possession of drugs with an intent to distribute them. He also acknowledged that he is able to walk, drive a car, and work. The prosecutor then followed up on these queries, pointing out to defendant that "in [his] lifetime, you've chosen to sell drugs, isn't that right?" Defendant acknowledged in response that he "sold drugs in the past."

Notably, in its instructions to the jurors at the end of the trial, the judge appropriately issued the model jury charge. Those instructions advised, consistent with N.J.R.E. 609, that the sole proper evidential use of defendant's prior convictions was for the purpose of impeaching his credibility, and that the convictions could not be used to infer defendant has a propensity to engage in criminal conduct.

Given the circumstances, we are unpersuaded that the prosecutor's unobjected-to reference to defendant's "choice" to engage in past drug dealing deprived him of a fair trial. Defendant chose to portray himself as a naïve and

law-abiding person who had no familiarity with guns, and who claimed he had been mistaken for his brother and had yet been running away from the officers. Although it perhaps would have been preferable for the prosecutor to have refrained from commenting on defendant's "life choices," the comments did not demonstrably cause undue prejudice and were ameliorated by the court's instruction to the jury. The jurors are presumed to have faithfully heeded the judge's admonitions. State v. Martini, 187 N.J. 469, 477 (2006).

The second event at issue concerns the prosecutor's following comment during closing argument:

> We all understand that William Bookman loves his brother, and he doesn't want any harm to come to his brother. That's called bias.

We detect no error, much less plain error, in this argument. The prosecutor was entitled to argue to the jury that the testimony of defendant's brother was not worthy of belief because of the inherent natural inclination of a family member to not want another family member to be sent to prison. The Supreme Court recently recognized the propriety of such an inference of familial bias. State v. Scott, 229 N.J. 469 (2017). In that case, the Court held it would be appropriate to question a mother about her relationship with her son to demonstrate bias and thereby impeach her anticipated trial testimony offering a benign explanation

for why drugs were found in his pants pocket. Id. at 473-74; 482-83; see also State v. Bass, 224 N.J. 285, 302 (2016).

B.

Defendant next argues that the trial court abused its discretion in denying his attorney's request to adjourn the trial for an additional time. We disagree.

As defendant's brief acknowledges, the trial court is reposed with substantial discretion "to control its own calendar." State v. Miller, 216 N.J 40, 65 (2013). A trial court's decision on an application for a trial adjournment is generally reviewed "under a deferential standard." Ibid. "Absent an abuse of discretion, [the] denial of a request for an adjournment does not constitute reversible error." State v. Smith, 87 N.J. Super. 98, 105 (App. Div. 1965). The denial of an adjournment request "will not lead to reversal unless it appears from the record that the defendant suffered manifest wrong or injury." State v. Hayes, 205 N.J. 522, 537 (2011). Such a manifest injury may exist where, for example, a trial court arbitrarily denied a defendant an adjournment when he was forced to change counsel mid-trial and was effectively left without representation. See, e.g., State v. Kates, 216 N.J. 393 (2014).

The present circumstances do not reveal any such prejudice or manifest injustice. The case had been listed for trial for early August 2017, following a

twelfth pretrial conference at which defendant switched from private counsel to representation by a public defender. A lengthy adjournment was granted from early August 2017 to December 2017 to enable the public defender to prepare for trial. The judge announced he would be on vacation for several weeks during that time and would not be imposing on counsel's time during that interval.

On November 29, 2017, the trial judge denied defendant's motion to suppress evidence. On that date, defendant's attorney sought another adjournment in light of certain other charges brought by another prosecuting agency that apparently complicated the possibility of a global plea. The judge declined the request. The following week, on the scheduled trial date of December 5, the judge offered defendant time to consult with his attorney to continue plea negotiations, but defense counsel told the court that "[w]e don't need any time," and that defendant "is not interested in a [negotiated] plea."

In light of these circumstances, we are satisfied the trial court afforded defendant and his counsel an ample opportunity to prepare for trial. The denial of the adjournment was not an abuse of discretion.

## C.

The last issue presented by defendant's appellate counsel concerns the consecutive sentence imposed for the "certain persons" violation on top of the

custodial term imposed on count one, the conviction for unlawful possession of a firearm. We agree with defendant that these two gun possessory offenses should not have produced consecutive sentences. Both counts concerned the illegal possession of the same gun at the same time and place. The elements of the unlawful possession count under N.J.S.A. 2C:39-5(b) overlap with the "certain persons" count under N.J.S.A. 2C:39-7(b), in that both counts involve defendant's possession of a firearm that he was not allowed to possess. Neither offense concerns defendant's purpose in possessing the gun, an element which would have added another significant ingredient to the charges.

We respectfully disagree with the trial court's observation that the two possessory counts and their objectives are "predominantly independent of each other." Although we agree with the court that it is "abhorrent" that defendant has reoffended after two previous convictions involving firearms offenses, the imposition of consecutive sentences in this situation was inappropriate. See State v. Yarbough, 100 N.J. 627 (1985) (delineating the standards for consecutive sentences); see also State v. Cuff, 239 N.J. 321, 347-49 (2019) (reaffirming the Yarbough factors). It was unlawful for defendant, regardless of his intent, to possess the nine-millimeter gun on the specified date for two reasons: (1) his lack of a required permit; and (2) his status as a convicted felon

A-5004-17T3

ineligible to possess a gun because of his criminal record. The conduct and its objectives were fundamentally the same.

There is no justification in this case for the consecutive "certain persons" term. That said, the trial court is free on remand at resentencing to re-calibrate the eight-year sentence on the unlawful possession count, so long as the aggregate sentence does not exceed the present aggregate term. State v. Cuff, 239 N.J. at 354; State v. Rodriguez, 97 N.J. 263, 276 (1984) (finding that defendant's double jeopardy protections were not violated where he successfully raised a merger issue on appeal and on remand the court imposed the same aggregate term by increasing the sentence for one offense); State v. Kosch, 458 N.J. Super. 344, 352 (App. Div. 2019) (finding that defendant's right against double jeopardy was not violated where, after defendant successfully appealed three of his nine convictions, the court imposed the same aggregate term by changing one sentence to an extended term), certif. denied, 240 N.J. 20 (2019).

D.

We have considered the arguments presented by defendant in his pro se supplemental brief and conclude they lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(2). We simply note that there was no error in the substantive portions of the jury instructions, which tracked the appropriate

model charges and were not objected to by defendant's trial counsel. In addition, the trial court's suppression denial was well supported, given the detective's lawful motor vehicle stop of defendant's vehicle, and the clear presumption of probable cause to arrest him when he fled and disobeyed police commands.

Affirmed as to defendant's convictions; remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5004-17T3