**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1891-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHELBY L. WILLIAMS, a/k/a
LAMONT W. SHELBY, and
LAMONT WILLIAMS,

     Defendant-Appellant.

_____

Submitted September 13, 2022 – Decided October 11, 2022

Before Judges Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-04-1041.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Shelby Williams was charged with six crimes arising out of alleged assaults on his former girlfriend and damage he allegedly caused to his girlfriend's property. During trial, the court dismissed the charge of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). Thereafter, a jury convicted defendant of third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1), but acquitted him of the remaining four charges: two counts of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(12); third-degree burglary, N.J.S.A. 2C:18-2(a)(1); and third-degree criminal coercion, N.J.S.A. 2C:13-5(a)(1). After finding that defendant was a persistent offender subject to a discretionary extended term under N.J.S.A. 2C:44-3(a), the court sentenced defendant to six years in prison.

Defendant appeals from his conviction, arguing that he was denied a fair trial because the trial court erroneously precluded certain evidence that would have supported his defense. Discerning no abuse of discretion in the trial court's evidence rulings, we reject defendant's arguments and affirm.

I.

We summarize the facts from the evidence presented at trial. The events that gave rise to the charges against defendant occurred on February 13 and 14,

2017. At that time, defendant was in a dating relationship with D.H. (Diane)[1] and they had a child together; a son, T.H., who was then four years old. Diane also had another son, D.M., from another relationship and D.M. was fourteen years old in 2017.

By February 2017, defendant was no longer living with Diane and her sons. Diane testified that on February 13, 2017, defendant came to her home and while there took a set of keys to the home. Defendant and Diane then argued, during which defendant put his hands around Diane's neck and pinned her against the refrigerator. Defendant also kicked one of Diane's televisions and broke it.

Thereafter, defendant spent the night at Diane's home and the next day she and defendant got into another argument concerning defendant's right to pick T.H. up from school. According to Diane, defendant grabbed her by the neck and choked her so hard that she lost consciousness. After Diane regained consciousness, defendant left the house. Diane then went to a police station. She explained that she did not want to report the assaults because she did not

---

[1] We use initials and fictitious names for the victim and her children to protect their privacy interests. See R. 1:38-3(c)(12).

want defendant to be arrested and lose his job. Instead, she wanted to have the police help her get defendant out of her house.

While Diane was at the police station, defendant came to the police station and returned the keys that he had to Diane's home. When Diane got back to her home, she saw that it had been vandalized: all three televisions were broken, a video game system and computer were broken, and some of her furniture had been damaged. Diane called the police who responded to her home and took photographs of the damage. The police also took photographs of Diane's neck and arms, depicting her injuries. Although Diane did not witness defendant damaging her home, she testified she believed defendant caused the damage because earlier that day he had told her that if she was not home when he returned, he would "f _ _ _ [her] up, f _ _ _ everything in the house up, and make [her] life a living hell."

At trial, defendant's primary defense was that Diane fabricated the allegations against him. Before trial, the State moved to preclude references to a custody dispute between defendant and Diane concerning their son. The trial court initially reserved decision on that issue but later precluded defendant from cross-examining Diane concerning the custody dispute.

A-1891-19

Defendant also sought to introduce evidence that Diane had falsely alleged he had violated a no-contact provision in his pretrial release order. In that regard, defendant moved to introduce evidence demonstrating that on two of the four occasions when Diane claimed defendant had come by her home in January and July 2018, defendant had not been near her home and his contention could be established by a GPS monitoring device that defendant had been wearing. The trial court ruled that the evidence was not relevant because Diane's allegations of the violation of the no-contact order were made eleven and eighteen months after the February 2017 assaults.

II.

On appeal, defendant seeks to reverse his conviction arguing that his right to due process and a fair trial was violated because the trial court limited the cross-examination of Diane thereby depriving him of the right to present a complete defense. In that regard, he challenges two evidentiary rulings: (1) the right to cross-examine Diane on a custody dispute; and (2) the right to cross-examine her on alleged false accusations of criminal behavior. Defendant articulates his argument as follows:

> DEFENDANT WAS DENIED HIS RIGHT TO PRESENT A COMPLETE DEFENSE BY THE TRIAL COURT'S MISTAKEN RULING PREVENTING HIM

5

FROM CHALLENGING THE ACCUSER'S CREDIBILITY.

Appellate courts review trial courts' evidentiary rulings under an abuse of discretion standard. State v. Garcia, 245 N.J. 412, 430 (2021); State v. Prall, 231 N.J. 567, 580 (2018). Accordingly, an appellate court will not set aside an evidentiary ruling unless it appears that the trial court made a "clear error of judgment." State v. Medina, 242 N.J. 397, 412 (2020) (citing State v. Scott, 229 N.J. 469, 479 (2017)).

A.    The Custody Dispute.

Before trial, the State moved to preclude reference to the custody dispute, arguing that bringing up that dispute would engender a trial within a trial. Initially, the trial court reserved decision on that issue. The trial court pointed out, however, that if evidence concerning the custody dispute came in, then other evidence related to those proceedings also probably would be admitted. In that regard, the court noted that the record from the family court included references to defendant's non-compliance with "batterer's counselling," a denial of paternity of the son, defendant's failure to abide by orders for paternity testing, and the issuance of a bench warrant against defendant in 2018.

A-1891-19

At trial, Diane testified that she did not seek to keep defendant's son from him. Accordingly, defendant sought to cross-examine Diane on her efforts to obtain custody of their son. The trial court denied that request.

Defendant contends that by precluding cross-examination on the custody dispute, the trial court prevented defendant from introducing evidence that Diane had a motive to fabricate allegations against him. We discern no abuse of discretion in the trial court's evidentiary ruling. Moreover, the evidentiary ruling did not deprive defendant of a fair trial.

At best, the custody dispute was a tangential issue. In February 2017, at the time of the alleged assaults and criminal mischief, the son was living with Diane. Following the incidents on February 13 and 14, 2017, Diane obtained a temporary restraining order and sole custody of her son. By the time of the trial, the family court proceedings were completed. If the trial court had allowed Diane to be cross-examined on the custody dispute, it is not clear that the evidence would have shown a motive for her to fabricate charges against defendant. If that issue had been introduced, the State would have had the right to show that defendant had denied paternity of his son and had resisted efforts to establish his paternity. In short, allowing evidence about the custody dispute would have engendered a trial within a trial and the introduction of issues that

7 A-1891-19

could have confused the criminal proceedings.  See N.J.R.E. 403.  Accordingly, we discern no abuse of discretion in the trial court's determination to preclude that evidence.

B.    The Allegations That Diane Had Falsely Alleged That Defendant Had Violated the No-Contact Order.

When defendant was released pretrial, one of the conditions of his release order was that he have no contact with Diane.  Between January 2018 and August 2018, Diane sent an assistant prosecutor text messages claiming that defendant had violated the no-contact order on four dates:  January 24, 2018, June 4, 2018, July 26, 2018, and August 21, 2018.  Defendant contended that he had evidence showing that he was subject to GPS monitoring on two of those dates:  January 24, 2018, and July 26, 2018.  He argued that those monitoring records would show that on those dates he was not near any address associated with Diane and, thus, her allegations were false.

Generally, a trait of character cannot be proven by specific instances of conduct.  State v. Herrerra, 211 N.J. 308, 349 (2012).  Our Supreme Court, however, has created a narrow exception to that prohibition and held that "in limited circumstances and under very strict controls a defendant has the right to show that a victim-witness has made a prior false criminal accusation for the purpose of challenging the witness's credibility."  State v. Guenther, 181 N.J.

A-1891-19

129, 154 (2004). That rule has since been codified in N.J.R.E. 608(b). Moreover, the Court has clarified that the narrow exception applies to false criminal allegations made after the underlying accusation. State v. A.O., 198 N.J. 69, 93 (2009).

To evaluate the proffered impeachment evidence, a trial court must conduct a preliminary hearing under N.J.R.E. 104 and "determine by a preponderance of the evidence whether the defendant has proven that a prior accusation charging criminal conduct was made by the victim and whether the accusation was false." A.O., 198 N.J. at 93 (quoting Guenther, 181 N.J. at 157).

In Guenther, the Court identified five factors to be considered in determining whether to allow evidence of a prior accusation charging criminal conduct. Those factors are:

> (1) whether the credibility of the victim-witness is the central issue in the case;
>
> (2) the similarity of the prior false criminal accusation to the crime charged;
>
> (3) the proximity of the prior false accusation to the allegation that is the basis of the crime charged;
>
> (4) the number of witnesses, the items of extrinsic evidence, and the amount of time required for presentation of the issues at trial; and

> (5) whether the probative value of the false accusation evidence will be outweighed by undue prejudice, confusion of the issues, and waste of time.
>
> [181 N.J. at 157.]

A trial court's determination of that issue will be reviewed for an abuse of discretion. Ibid.

Here, the trial court did not conduct an independent hearing under N.J.R.E. 104. Nevertheless, the evidence in the record establishes that the trial court did not abuse its discretion. The trial court correctly reasoned that there was no similarity between the false accusations and the crimes charged. Defendant contended that Diane falsely accused him of violating a no-contact order. In contrast, defendant was on trial for allegations of aggravated assault, burglary, criminal mischief, and criminal coercion. In addition, there was no proximity between the false accusations and the current charges. Defendant's criminal charges arose out of conduct alleged to have taken place on February 13 and 14, 2017. He wanted to introduce evidence that Diane falsely accused him of violating the no-contact order in January 2018 and July 2018. Consequently, the subsequent false accusations were made eleven and eighteen months after the criminal charges that were the subject of defendant's trial.

In modifying and extending the rule in <u>Guenther</u>, the Court in <u>A.O.</u> cautioned:

> Courts should continue to apply the factors [<u>Guenther</u>] sets forth in deciding the question of admissibility and be mindful of its concerns to avoid distracting mini-trials. Only 'in limited circumstances and under very strict controls,' does a defendant have the right to challenge a witness's credibility regarding a later false criminal accusation.
>
> [<u>A.O.</u>, 198 N.J. at 94 (quoting <u>Guenther</u>, 181 N.J. at 154).]

Accordingly, we discern no abuse of discretion in the trial court's decision precluding evidence concerning Diane's subsequent false criminal accusations against defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1891-19