# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0233-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEVIN B. KAPPEN,

    Defendant-Appellant.

_____

> Argued October 1, 2024 – Decided November 25, 2024
>
> Before Judges Sumners and Bergman.
>
> On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 21-01-0089.
>
> Stephen W. Kirsch, Designated Counsel, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Stephen W. Kirsch, on the brief).
>
> William Kyle Meighan, Supervising Assistant Prosecutor, argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, on the brief).

PER CURIAM

Defendant Kevin B. Kappen appeals from jury trial convictions for first-degree aggravated sexual assault, second-degree sexual assault, and third-degree endangering the welfare of a child. Based on our review of the record and applicable legal principles, we affirm.

I.

In January 2021, defendant was indicted for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (count three); and third-degree terroristic threats, N.J.S.A. 2C:12-3(a) (count four). The jury trial was held in February and March 2022. Prior to trial, the State dismissed count four.

The following facts are taken from the record below. A.T. (Andrew)[1] was eight years old at the time of the sexual assault by defendant. He lived with his great grandparents, E.D. (Edward) and M.D. (Mary) who were his legal guardians. Also living at the residence were his aunt C.D. (Cori) her fiancé and Andrew's sister. Defendant is a long-time friend of Andrew's family, who knew Edward for approximately fifty years and had worked for him for several years.

---

[1] We use initials and pseudonyms to protect the identities of the victims and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(10)

Andrew testified during the trial. He stated defendant came to the residence in October 2019 on his sixtieth birthday in an intoxicated state. Andrew went to the garage to give defendant a hug and kiss for his birthday. During the kiss, defendant used his tongue and Andrew reciprocated. Defendant then told Andrew to take off his pants and underwear. Andrew complied. Defendant then "put his mouth on" what Andrew described as his "private part" on the "front." Defendant then asked Andrew if he could lick his private part, which Andrew agreed, and the defendant performed fellatio on Andrew. Andrew testified defendant asked, "can I take my pants . . . down so you can see mine" (referring to his penis) so he could perform fellatio on defendant, to which Andrew claimed he "got too uncomfortable" and ran off around the corner, while crying. While he ran off, he claimed defendant stated "hey, I love you, don't go[.]" After Andrew left the garage, he encountered a "couple". He told the couple what had happened. He testified the couple called the police.

Cori also testified. She stated that on the same day, she observed defendant enter the home and saw him take ice out of the freezer and inquired where Andrew was because "to [her] knowledge, [defendant] was back in the garage with [Andrew]." She testified defendant claimed he did not know where Andrew had gone and commented Andrew had "tried giving [defendant] a

birthday kiss with his tongue." She told defendant, she "hope[d] [defendant] told [Andrew] that [was] very inappropriate" and asked again where Andrew was, to which defendant repeated he "did not know."

Cori testified, thereafter, Andrew came inside the house and told her he gave defendant a "birthday kiss" with his tongue, and that defendant "put his mouth on his private part." Andrew told her defendant wanted Andrew to do the same to him and Andrew got scared and left on his scooter to the adjoining street.

Detective Russel Griffin of the Stafford Township Police Department testified he was dispatched to the area of the residence regarding a report that an eight-year-old boy was sexually assaulted. When he arrived, people were gathered around Andrew. He escorted Andrew away from the others to inquire what had transpired.

Griffin then brought Andrew to the residence. Upon arriving there, Andrew pointed out the defendant near the garage. At that time, he encountered Andrew's family as well as defendant, who walked up to the car from the garage with Edward. He asked defendant for his name, and defendant responded,

"Uncle Barry"[2] and said, "[Andrew] makes up stories all the time." Griffin testified defendant asked, "[s]o where is [Andrew] now?" to which he responded, "he is in my police car" and defendant responded, "Oh, is he?" When Griffin went back to his vehicle and let Andrew out, Andrew told defendant, "I called the police . . . You don't have to tell lies."

Griffin testified Andrew then went to the residence to use the bathroom but left the door open while he waited outside. Cori testified she was in the kitchen and could see down the hallway to the bathroom, and Andrew called out to her and stated, "look, Aunt [Cori], there's even slobber" pointing to his pants which had been pulled down. Cori testified she noticed there was something moist on Andrew's pants.

Thereafter, Andrew was transported to the Special Victims Unit where Detective Jason LaRaia of the Ocean County Prosecutors Office interviewed him. On the recorded interview played in trial, Andrew recounted the events that occurred earlier in the day which he had told the couple, Cori, and Griffin.

Once the interview was completed, Griffin testified he brought Andrew and Mary to Southern Ocean County Hospital for a forensic exam. Donna

---

[2] Defendant was commonly referred by his middle name instead of his first name.

A-0233-22

Velardi, R.N., a nurse at the hospital testified she collected a buccal swab, collected swabs of dried secretions from Andrew's face, shoulder and knee, collected a swab from the external genitalia, and collected Andrew's underwear, t-shirt, and shorts and sent them out for forensic testing.

Andrea MacCormack a forensic scientist in the New Jersey State Police Office of Forensic Sciences testified there were two areas of staining on the inside crotch panel of Andrew's underwear, one towards the front and one towards the rear of the panel; the stains contained amylase which indicate the presence of saliva; and that the amylase presence was weaker on the front portion and strong on the rear portion. In addition, MacCormack noted the dried secretions on the perioral (mouth) of Andrew showed a strong presence of amylase.

Dr. Riza Ysla, a forensic scientist in the New Jersey State Police Laboratory, testified the DNA testing on the sample of Andrew's underwear contained a mixed profile with two contributors: Andrew's DNA; and defendant's DNA. Dr. Ysla testified the mixture on the DNA profile was close to being one-to-one ratio and defendant's profile far exceeded the threshold for determining him as the source of the other DNA. Dr. Ysla also testified Andrew's external genital swab DNA testing also revealed a mixed DNA profile.

6

One source was Andrew's while the other source was unknown because the sample was not suitable for comparison and the DNA testing on the perioral swab was consistent with Andrew's DNA only.

In addition, the State played a mobile video recording (MVR) from Griffin's body worn camera. The MVR depicts Griffin approaching the defendant outside of the residence while Andrew was in the police car. On Griffin's approach Andrew got out of the car and said to defendant "[s]top . . . I called the police. I told you, you don't have to tell lies."

Prior to trial, defense counsel moved to exclude any testimony that the defendant was lying on the date in question because of his state of intoxication. The court ruled "[a]ny statements regarding [d]efendant's alleged 'lying' while intoxicated shall be redacted from any witness' statements."

Also prior to trial, the court heard a defense motion in limine to exclude and redact certain portions of the MVR concerning statements made by Andrew. The judge found the statements made by Andrew to Griffin on the video were admissible under the hearsay exception pertaining to statements by a child relating to a sexual offense as set forth at N.J.R.E. 803(c)(27).

In addition, at a pretrial hearing, the trial court and counsel for the parties reviewed the MVR recording to resolve issues concerning redactions before

A-0233-22

playing it before the jury. When reviewing the portion of the video where Andrew said to defendant "You don't have to tell lies," defense counsel stated the exchange between Andrew and defendant should "remain for the jury's consideration." At trial, and during the summations, the statement was replayed several times without any objection from defense counsel.

Defendant elected to testify at the trial. Defendant testified after he saw Andrew's family members drive off in their truck, Andrew came into the garage with his scooter, and defendant complimented him on getting some exercise instead of playing video games. According to defendant's version of events, Andrew told him "[I]t's your birthday . . . Uncle Barry!" and gave defendant a hug, but, as defendant turned his head, Andrew suddenly kissed him on the lips and "shove[d] his tongue in my mouth." Defendant testified he immediately pulled away and rebuked Andrew, telling him not to kiss someone like that at his age. Defendant testified he was "shocked" and immediately went and told Cori what had happened when he entered the residence to fill his cup with ice. Defendant testified he also reported the incident to Edward when he returned home. Defendant denied performing oral sex on Andrew and testified that he has no idea how his DNA got onto the back side of Andrew's underwear.

A-0233-22

After the State rested, the court held a hearing outside the presence of the jury pursuant to N.J.R.E. 104(a), to resolve the parties' dispute as to the admissibility of an opinion witness offered by defendant, Roy J. Hollingshead, Jr. to testify concerning his opinion that Andrew had a character trait for being untruthful.

Hollingshead testified he lived next door to Edward and Mary for thirty-seven or thirty-eight years and during the events that transpired between defendant and Andrew. He was familiar with everyone there, but he was particularly close to Edward; he knew defendant, as Edward's "main worker," for twenty-five years; and he knew Andrew for "four to five years."

When Hollingshead was questioned concerning his opinion of Andrew's character for truthfulness, he responded:

> He was all over the place, that kid. He was always, as far as truthfulness, I would say to my wife like, I could go on and on and on, okay. I'd say, unfortunately, it's not the kid's fault, he was born into this world, but I wouldn't, I wouldn't believe a lot of things. He was kind of in his own little world.

Hollingshead testified how he formed his opinion, noting "[Andrew] to me was an untruthful kind of kid," and pointed to an incident where Andrew allegedly lied about stealing Edward's cellphone.

9

On cross examination, the prosecutor inquired as to how well Hollingshead knew Andrew. Hollingshead testified he "would go over" to the residence and "would hear [Andrew] throwing these like temper tantrums in the driveway and what have you."  He knew Andrew "as a neighbor" and never observed Andrew in school.  He had worked inside the Edward's home installing carpet and agreed he was familiar with "[t]he family dynamic" in the home.  He testified that he was not familiar with any "speech impediment or [Andrew's] neurological disorders," and only "knew [Andrew] had issues, . . . because I know that initially he was a on regular bus with kids and then he caused a lot of trouble and . . . they put him on a smaller bus with more special needs children." His opinion of Andrew was formed "through my own eyes."  He testified "[Andrew] would argue and scream, and yell with his sister."  He further noted Andrew would "throw the bike down [and] throw these temper tantrums . . . and would be saying to his sister, you're my girlfriend, . . . and she would tease him and would throw temper tantrums for thirty minutes straight out of the blacktop, just screaming and yelling." He testified he did not know the victim on a personal level, and he did not have conversations with the victim beyond idle chitchat.  He also clarified that by "all over the place" he meant that he would ride up and down the street on his bike.

A-0233-22

When the court asked him his opinion on the victim's truthfulness, Hollingshead repeated that "the kid was in his own world." When asked to clarify, he said, "I didn't spend that much time with the kid, okay, seeing him." Hollingshead stated that he formed that opinion because "there was a period of time when the victim was calling his grandfather and saying his grandfather was beating him." Hollingshead admitted on cross-examination that he did not have any direct knowledge that the victim called the police, and did not see him make any call.

On redirect examination, Hollingshead was asked again what his opinion was on the victim's character for truthfulness. He answered, "I mean I didn't know him enough aside from seeing him, but from, like I said before, he was in his own little world, and I don't know if I could really could trust him."

Once Hollingshead's testimony was completed, defendant's counsel argued that pursuant to N.J.R.E. 701, Hollingshead should be entitled to provide his lay opinion concerning Andrew's character trait for truthfulness to the jury pursuant to N.J.R.E. 608(a).

In response, the State argued: "Hollingshead . . . didn't develop an opinion on [Andrew] at all really" and he just "heard stuff around the neighborhood" and "saw some weird conduct . . . classif[ied] as abnormal behavior by a small child."

11

The State argued "the facts that he elicited during the course of the testimony wasn't . . . uncommon for a small child.  He fights with his sister, he wants to watch [shows] on TV that maybe an adult doesn't want him to watch, and he gets into fights with his grandfather."  The State argued that Hollingshead did not develop a sufficient basis to qualify as an opinion under N.J.R.E. 608 and 701.

In his oral decision, the judge found Hollingshead's testimony:

> [M]ight have been helpful with respect to determining the fact at issue because credibility is always an issue. However, I think that both the defense and the State put their fingers on the issue.  The witness' testimony fundamentally had been that I didn't him well enough to formulate and opinion.  So, I didn't find that there had been a basis established and I didn't even really hear a fully articulated opinion as to the issue of truthfulness or untruthfulness.
>
> So, I see no point in permitting Mr. Hollingshead to testify in this matter.  I don't care how you read 608 and 701, I don't think that there's, I just don't think there's a sufficient basis here for the perception to render an opinion on this issue of the child's untruthfulness.  So, I'm going to find that Mr. Hollingshead cannot render those opinions on 608, 701.

The judge concluded "[Hollingshead's] testimony fundamentally ha[s] been that he didn't know [Andrew] well enough to form an opinion" and barred Hollingshead's testimony.

A-0233-22

The jury found defendant guilty on counts one, two, and three. After merger, defendant was sentenced to twenty-five years, without the possibility of parole.

## II.

On appeal, defendant argues the following points:

POINT 1

THE TRIAL JUDGE UNDULY RESTRICTED DEFENDANT'S DUE-PROCESS AND SIXTH AMENDMENT . . . RIGHTS TO COMPULSORY PROCESS AND TO PRESENT A COMPLETE DEFENSE WHEN HE BARRED TESTIMONY FROM A DEFENSE WITNESS WHO HAD OFFERRED HIS OPINION UNDER N.J.R.E. 608(A) THAT THE ALLEGED VICTIM IN THE CASE IS UNTRUTHFUL.

POINT 2

THE JUDGE COMMITTED REVERSIBLE ERROR BY ADMITTING INTO EVIDENCE, AS PART OF A "TENDER YEARS" HEARSAY STATEMENT UNDER N.J.R.E. 803(C)(27), A STATEMENT BY THE ALLEGED VICTIM THAT ACCUSED THE DEFENDANT OF LYING.

POINT 3

DEFENDANT'S CONVICTIONS SHOULD BE REVERSED FOR CUMULATIVE ERROR.

III.

We review a trial court's evidentiary rulings "'under the abuse of discretion standard because . . . the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.'" State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). "Under this deferential standard, we review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). A reviewing court will not substitute its "judgment for the trial court's unless," the trial court's determination "was so wide of the mark that a manifest denial of justice resulted." Ibid. (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

A.

We first address the judge's decision barring Hollingshead's testimony concerning Andrew's alleged trait for being untruthful.

N.J.R.E. 608(a) permits the lay opinion of a witness' character for untruthfulness:

> A witness' credibility may be attacked or supported by evidence in the form of opinion or reputation that relates to the witness' character for truthfulness or untruthfulness, provided that evidence of truthful character is admissible only after the witness' character

for truthfulness has been attacked by opinion or reputation evidence or otherwise.

[N.J.R.E. 608(a)]

Lay opinion evidence is "limited to testimony that will assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue." State v. McLean, 205 N.J. 438, 458 (2011). Lay opinion testimony is admissible subject to two conditions set forth in N.J.R.E 701. Lay opinion evidence "may be admitted if it: (a) is rationally based on the witness'[s] perception; and (b) will assist in understanding the witness'[s] testimony or determining a fact in issue." N.J.R.E. 701. A witness's perception is knowledge acquired "through the use of one's sense of touch, taste, sight, smell[,] or hearing." McLean, 205 N.J. at 457. Fact testimony relates to what a witness did or saw. Id. at 460.

Applying these standards, we conclude the judge did not abuse his discretion by barring Hollingshead's opinion testimony. The judge found — and the record clearly shows — that Hollingshead did not know Andrew well and had never directly interacted with him. We agree with the judge that Hollingshead's testimony was not "rationally based on his perception" and would not "assist in understanding his testimony or in determining a fact in issue." Hollingshead unequivocally testified "I didn't know [Andrew] enough

15

aside from seeing him, but from, like I said before, he was in his own little world, and I don't know if I could really could trust him." We conclude the testimony that Andrew was in "his own little world" and he could "not trust him" have no rational nexus. Simply put, because someone may be in their own world does not mean that person is untruthful.

In addition, we determine defendant's argument that Hollingshead's opinion should have been admitted based on his testimony concerning the specific instances where he believed Andrew was untruthful to be unpersuasive. At the 104 hearing, Hollingshead testified he observed Andrew accuse Edward of physically abusing him which he deemed was false. Importantly, Hollingshead provided no testimony as to the factual basis to support the statements were actually false or found to be false by any investigative agencies, a reviewing tribunal or any other source. Hollingshead had no personal knowledge to form an opinion concerning Andrew's claims that Edward abused him. We agree with the trial judge the factual basis of Hollingshead's testimony was not a validly proven perception since he did not know whether the abuse occurred.

In addition, Hollingshead's testimony that Andrew stole Edward's phone does not support defendant's argument that Andrew has a trait for being

untruthful, especially since it is undisputed that Andrew admitted he took the phone and never once represented he did not take the phone.

We determine the trial court did not abuse its discretion in determining that Hollingshead's lay opinion does not meet the threshold requirements of N.J.R.E. 701. The judge's findings were adequately supported by the record, were a proper application of the applicable legal principles, and therefore were not an abuse of discretion.

## B.

We now turn to defendant's contention, raised for the first time on appeal, the admission of Andrew's statement on the MVR recording that "[defendant does not] have to tell lies" constitutes plain error. We are unpersuaded.

"Plain error is a high bar and constitutes 'error not properly preserved for appeal but of a magnitude dictating appellate consideration.'" State v. Santamaria, 236 N.J. 390, 404 (2019) (quoting State v. Bueso, 225 N.J. 193, 202 (2016)). Stated differently, we must determine whether the alleged error was "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. To warrant a reversal under this standard, the "error at trial must be sufficient to raise 'reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Funderburg,

225 N.J. 66, 79 (2016) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). "To determine whether an alleged error rises to the level of plain error, it 'must be evaluated in light of the overall strength of the State's case.'" State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)). See State v. Wilson, 173 N.J. 417, 471 (2002) (holding that a failure to object to testimony permits an inference that any error in admitting the testimony was not prejudicial); State v. Frost, 158 N.J. 76, 84 (199) (stating "[t]he failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made").

Here, not only did defendant fail to object to the statement at trial, but his counsel also affirmatively agreed the statement could be played before the jury after a thorough review with the prosecutor and the court prior to its admission.

Further, the strength of the State's case belies defendant's plain error argument. See Clark, 251 N.J. at 287. DNA evidence showed defendant's saliva was found on Andrew's underwear, corroborating his statements to police and others. Defendant's argument that this expert testimony was offset by testimony elicited on cross examination, that saliva could be transferred from the victim wiping his mouth on his underwear after the kiss, was heard and rejected by the jury.

## C.

We now address defendant's argument that the judge's evidentiary errors were cumulative error. In considering cumulative error review, a party must demonstrate any error or pattern of errors rise to the level, either singly or cumulatively, which deny her a fair trial because "[a] defendant is entitled to a fair trial but not a perfect one." State v. R.B., 183 N.J. 308, 334 (2005) (quoting Lutwak v. United States, 344 U.S. 604, 619 (1953)). The cumulative effect of trial errors may warrant reversal when it "casts doubt on the propriety of the jury verdict that was the product of that trial." State v. Jenewicz, 193 N.J. 440, 474 (2008). Reversal may be justified when the cumulative effect of a series of errors is harmful, even if each error itself is harmless. Id. at 473. "[T]he predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair." State v. Wakefield, 190 N.J. 397, 538 (2007).

Because we have determined defendant's first two arguments lack merit, we conclude no cumulative error existed which would cast doubt on the propriety of the jury verdict.

A-0233-22

To the extent we have not otherwise addressed defendant's arguments, they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0233-22